[No. 14103-1-I. Division One. April 22, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. JOSEPH SHERMAN SARGENT, *Appellant.*

*James E. Lobsenz* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *John Bell* (counsel for appeal only) and *Michael Schwartz, Deputies,* for respondent.

RINGOLD, J.—Joseph Sherman Sargent was found guilty by a jury of murder in the first degree and arson in the

second degree. Sargent appeals the judgment and sentence, arguing prosecutorial misconduct deprived him of a fair trial. He also contends the trial court made three evidentiary errors and that the evidence is insufficient to prove premeditation. We reverse.

At 5:38 a.m. on July 11, 1983, the Seattle Fire Department was called to a house fire in West Seattle. All doors and windows to the house were secure, and the firemen had to break in through a side door. A paramedic entered the house and found a body lying on the waterbed, later identified as Lori Sargent. She had two massive head wounds, caused by two severe blows to the head with a blunt instrument. The blows resulted in severe skull fracturing, which was determined to be the cause of death. Arson investigators opined that the fire was intentionally set and originated in the bedroom.

Following the discovery of the victim the police attempted to locate Sargent. On July 11 the defendant did not appear for work as scheduled at a restaurant in Seattle, where he had started working 5 days before. Police eventually discovered that Sargent was staying with relatives in Oregon, and he was contacted by the police on July 16, 1983. Sargent was released after being interviewed, but on July 19, 1983, he was formally arrested and charged with the murder of his wife and with arson in the first degree.

## PROSECUTING ATTORNEY'S CLOSING ARGUMENT

Sargent asserts that two separate instances of prosecutorial misconduct occurred in closing argument. First, he contends that the prosecutor deprived him of a fair trial by personally vouching for the credibility of a key state witness. Second, he contends that the prosecutor violated his Fifth Amendment privilege against self–incrimination by indirectly commenting on his failure to testify.[1]

---

[1]Sargent also argues that the prosecutor improperly expressed his personal opinion that the defendant was guilty. This claim is without merit. Arguing that Brown's testimony was unnecessary to convict Sargent, the prosecutor stated, "There was already evidence sufficient to convict the defendant of these crimes

## Vouching for Credibility

Jerry Lee Brown, Sargent's cellmate in Oregon, testified that Sargent told him that during an argument with his wife, Sargent had hit her repeatedly with a weapon while he was either drunk or on drugs. Brown stated that Sargent didn't remember anything about a fire.

Brown gave four separate statements prior to trial that contained several inconsistencies. Brown admitted he hoped to help himself by testifying. The prosecution agreed that Brown was a "flake," but argued he should be believed.

In final argument the deputy prosecutor stated to the jury:

Ms. Levy in her remarks told you that there is—she wondered out loud why Mr. Schwartz, why I didn't mention Mr. Brown in my opening statement, why I referred to him only briefly in my closing remarks. Somehow that's an issue. Somehow that affects the guilt or innocence of that man. The inference of those remarks being that I didn't believe Jerry Lee Brown or I didn't ascribe to what he had to say or I didn't put any faith in his testimony, I didn't vouch for him somehow. Well, that's wrong.

*I believe Jerry Lee Brown. I believe him* when he tells us that he talked to the defendant, that the defendant told him that he had beaten his wife in the past and had gone into counseling, just like Mr. VanderVelden said. *I believe him* when he said that his wife was once beaten, Mr. Sargent once beat his wife, and his attitude towards it was she had it coming, just as another witness testified, Chris Giles. When he said that Joe Sargent killed his wife, that he, Joe Sargent, told him that he killed his wife, he was believed. *There was no other reason he would be testifying other than the fact that the people that called him as a witness believed what he has to say.*

(Italics ours.)

■ It is improper for a prosecutor to express his per-

---

that were charged, and we went forward with it." This is not an expression of personal opinion, but a permissible assertion that the evidence supports a guilty verdict. *State v. Papadopoulos,* 34 Wn. App. 397, 662 P.2d 58, *review denied,* 100 Wn.2d 1003 (1983).

sonal opinion about the credibility of a witness and the guilt or innocence of the accused in jury argument. *State v. Reed,* 102 Wn.2d 140, 684 P.2d 699 (1984). "Prejudicial error does not occur until such time as it is clear and unmistakable that counsel is not arguing an inference from the evidence, but is expressing a personal opinion." *State v. Papadopoulos,* 34 Wn. App. 397, 400, 662 P.2d 59, *review denied,* 100 Wn.2d 1003 (1983). In the case at bench, the prosecutor's remarks directly place the integrity of the prosecution on the side of Brown's credibility and are improper. *Reed.*

The State contends that defense counsel's argument to the jury opened up the issue of the prosecutor's personal beliefs, and thus the response is proper rebuttal.[2] In *State v. Wright,* 97 Wash. 304, 307, 166 P. 645 (1917), the defendant insinuated that the prosecutor did not have the courage to dismiss the action, and the court held it was not error for the prosecutor to state his belief that the defendant was guilty in rebuttal.

The general rule is that remarks of the prosecutor, that would otherwise be improper, are not grounds for reversal where they are invited or provoked by defense counsel, or in reply to defense counsel's statements, unless the remarks are so prejudicial that an instruction would not cure them. *State v. Davenport,* 100 Wn.2d 757, 761, 675 P.2d 1213 (1984).

In *United States v. Young,* __ U.S. __, 84 L. Ed. 2d 1, 105 S. Ct. 1038, 1045 (1985), the Supreme Court reevaluated the rule, stating:

> In order to make an appropriate assessment, the reviewing court must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo. Thus the import of the evaluation has been that if the prosecutor's remarks were "invited," and did no more than respond substantially in

---

[2]The State refers to the following statements by defense counsel: "When the prosecutor gave his opening statement, he did not mention Jerry Lee Brown. And when he gave his closing, the first parts of it did not mention Jerry Lee Brown."

order to "right the scale," such comments would not warrant reversing a conviction.

The Court criticized the practice of responding in kind to improper argument by defense counsel, and made it clear that the State's appropriate response is to request a curative instruction at trial. The Court held that the test is not whether the prosecutor's remarks were invited, but whether, taken in context, the remarks unfairly prejudiced the defendant.

Sargent failed to object to the prosecutor's statements about Brown's credibility. This constitutes a waiver of the error unless the prosecutor's comments are deemed flagrant and ill intentioned and the resulting prejudice so enduring that jury admonitions could not neutralize its effect. *State v. Brown,* 29 Wn. App. 770, 774, 630 P.2d 1378, *review denied,* 96 Wn.2d 1013 (1981).

In *State v. Reed, supra,* the Supreme Court remanded for a new trial because of prosecutorial misconduct, even though the trial court sustained defense objections to the offending remarks during trial. The prosecutor not only expressed his personal opinion that the defendant was a liar, but also impugned the defense witnesses as being unbelievable because they were from out of town and drove fancy cars. *Reed,* at 143–45.

Although the prosecutor's comments here were not as egregious as those in *Reed,* they bolstered the credibility of the only witness directly linking Sargent to the crime. All of the other evidence against Sargent is circumstantial. The court in *Reed* considered that the State's case was not overwhelming in reaching its decision. As in *Reed,* the evidence against Sargent is not overwhelming. There is evidence of motive and opportunity, but the State's case is weak without Sargent's confession to Brown. The prosecutor's remarks could not have been cured with an appropriate instruction, and the remarks were so prejudicial as to deprive Sargent of a fair trial. *Reed.*

## Fifth Amendment

In closing argument the deputy prosecutor stated, over objection that if the defendant had known of any other possible suspects, the jury would have heard of them. Sargent contends that the prosecutor's remark indirectly commented on his failure to testify, violating his Fifth Amendment privilege against self–incrimination. *United States v. Buege,* 578 F.2d 187, 188 (7th Cir. 1978), *cert. denied,* 439 U.S. 871 (1978).

■ "The test employed to determine if defendant's Fifth Amendment rights have been violated is whether prosecutor's statement was of such character that the jury would naturally and necessarily accept it as a comment on the defendant's failure to testify." *State v. Crawford,* 21 Wn. App. 146, 152, 584 P.2d 442 (1978). The prosecutor may state that certain testimony is undenied, without reference to who could have denied it. *State v. Ashby,* 77 Wn.2d 33, 459 P.2d 403 (1969). In *Crawford,* the court held that the prosecutor may comment that evidence is undisputed. *Accord, State v. Sutherland,* 24 Wn. App. 719, 604 P.2d 957 (1979), *rev'd on other grounds,* 94 Wn.2d 527, 617 P.2d 1010 (1980).

In the case sub judice, the prosecutor stated:

> Now, if there is someone else in this world who Lori Sargent was a target for, you better believe you would have heard about it. If someone else had the kind of motive that this man had to kill her, you better believe the defense would have found out about it, tried to find out about it,—
>
> Ms. Levy: Objection, your Honor.
>
> The Court: Overruled, it's closing argument.
>
> Mr. Schwartz: —and said something about it.
>
> The burden never shifts from the state to prove that the defendant is guilty, don't get me wrong. But if *you are on trial* for murder *and you know* that someone else has a motive as strong as yours to have killed that person in the way that this was done, *you're going to tell somebody about that.*

(Italics ours.)

The prosecutor directly commented on the defendant's failure to tell about others with possible motives to commit the crime. Drawing attention to the defendant's failure to testify is constitutional error. *Griffin v. California,* 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229 (1965). *State v. Messinger,* 8 Wn. App. 829, 509 P.2d 382, *review denied,* 82 Wn.2d 1010 (1973), *cert. denied,* 415 U.S. 926 (1974).

There are two alternative ways to decide whether constitutional error is harmless: the "contribution test" and the "overwhelming evidence test." *State v. Johnson,* 100 Wn.2d 607, 621, 674 P.2d 145 (1983). As previously discussed, there is not overwhelming evidence of Sargent's guilt. The prosecution's case consisted primarily of circumstantial evidence showing only opportunity and motive. Calling attention to the defendant's failure to testify probably contributed to the guilty verdict. It cannot be said, therefore, that the error was harmless.

### ADMISSION OF PHOTOGRAPHS

The defendant made a pretrial motion to exclude certain photographs of the victim from evidence. The trial court excluded three photographs, but admitted several others. Sargent contends that the photographs were unnecessary because the prosecution used diagrams to illustrate the medical examiner's testimony. He also argues that the photographs were gruesome and prejudicial. One juror had to be removed because she could not look at the pictures.

"The admissibility of photographs is generally within the sound discretion of the trial court, and the trial court's ruling will not be disturbed on appeal, absent the showing of abuse of discretion." *State v. Crenshaw,* 98 Wn.2d 789, 806, 659 P.2d 488 (1983). Even repulsive photographs are admissible if their probative value outweighs their prejudicial effect. *Crenshaw,* at 806.

Admission of photographs may, however, constitute reversible error. The problems posed by admitting such photographs were discussed in *State v. Adams,* 76 Wn.2d 650, 681, 458 P.2d 558 (1969) (Rosellini, J., dissenting),

*rev'd in part,* 403 U.S. 947, 29 L. Ed. 2d 855, 91 S. Ct. 2273 (1971):

> The majority seems to feel that, because we have never found that the introduction of photographs constituted prejudicial error, we are committed to the philosophy that the trial court's exercise of discretion on such matters is not subject to review. The trouble is, I fear, that every time we refuse to reverse in a doubtful case, the impression is created that the prosecutor is free to go a little further next time. I also fear that, if this trend is allowed to continue, pictorial appeals to the emotions of the jury may become an accepted substitute for proof that the defendant committed the crime.

More recently, the Supreme Court expressed increased concern over the possibility that prosecutors might believe there was no limit to the inflammatory nature of photographic evidence.

> Prosecutors as well as trial courts must exercise their discretion in the use of gruesome photographs. The statement that "the State had the right to prove its case up to the hilt in whatever manner it chose," must be read to mean only that the State may present ample evidence to prove every element of the crime. . . . Prosecutors are not given a carte blanche to introduce every piece of admissible evidence if the cumulative effect of such evidence is inflammatory and unnecessary.

*State v. Crenshaw,* 98 Wn.2d 789, 807, 659 P.2d 488 (1983).

The issue here is whether the trial court properly exercised its discretion in admitting the photographs. Four autopsy photographs, exhibits 47 through 50, were admitted. The State argues that exhibit 47, depicting the wounds to the back of the victim's head, is relevant to show the force of the fatal blows.[3] From this the State infers evi-

---

[3] "Rule 401 defines 'relevant evidence' as 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' The definition encompasses two concepts—probative value and what is often loosely referred to as 'materiality.' That is, evidence is not relevant unless (1) it has a tendency to prove or disprove a fact, and (2) that fact is of consequence in the context of the other facts and the applicable substantive law." (Footnotes omitted.) 5 K. Tegland, Wash. Prac., *Evidence* § 82, at 168 (2d ed. 1982).

dence of premeditation. Whatever marginal relevance this photograph has on the issue of premeditation is outweighed by the prejudicial effect of the other photographs. ER 403.[4] The other autopsy photographs have no discernible relevance and are prejudicial.

The trial court also admitted exhibits 20 and 21, showing the victim's body on the waterbed. The State referred to this evidence in final argument. There is, however, testimony from the firefighters who discovered the body that reveals the same information gleaned from these photographs. Diagrams could reveal the same information as the photographs in a nonprejudicial manner. Under the circumstances of this case, the prejudicial effect of the photographs outweighed any probative value. ER 403.

### DETECTIVE NORDLUND'S TESTIMONY

Prior to jury selection, defense counsel moved in limine to prohibit Detective John Nordlund from stating his opinion of Sargent's response when told his wife was dead. Sargent argued to the trial court that Nordlund should be limited to repeating Sargent's statements and describing his demeanor. Although the court reserved its ruling until Nordlund testified, the trial judge responded to the motion stating:

> I can assure you that any testimony which leaps over any evidence of precisely what was said by the defendant or gestures or expressions, imitating and the like, simply leaps to a conclusion, I would not expect to allow.
>
> By telling the prosecutor now, I would be shocked if he doesn't make sure that doesn't come out that way.

Detective Nordlund stated that after bringing Sargent to the police station, Sargent was informed his wife was dead. Nordlund then testified, "[Sargent's] words were, 'Lori's— you mean something happened to Lori?'"

The prosecutor then asked Nordlund to give his impres-

---

[4]ER 403 reads in part: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . ."

sion of Sargent's response. Over objection Nordlund answered:

> A. My impression of his response? It was, his response kind of surprised me. Like I thought that he knew that his wife was dead and then he kind of went forward and says, "Lori, you mean something happened to Lori?" You know, I was somewhat taken aback because I thought he knew his wife was dead. And *I don't know whether you can characterize his response as being contrived or— that's impression I got.*

(Italics ours.) Sargent contends that the italicized testimony implied that Sargent was guilty and was improper opinion evidence.

In *State v. Jamison,* 93 Wn.2d 794, 798, 613 P.2d 776 (1980), the Supreme Court commented:

> Generally, where witnesses have no special skill, experience, or education concerning the subject matter of their testimony, they "must state facts, and not draw conclusions or give opinions." . . . This rule need not be adhered to, however, "if the subject matter of the testimony cannot be reproduced and described to the jury precisely as it appeared to the [lay] witness . . ." *Ulve v. Raymond,* 51 Wn.2d 241, 253, 317 P.2d 908 (1957). In such cases, a witness who has had some means of personal observation may relate the basis of his observation and then "state his opinion, conclusion, and impression formed from such facts and circumstances as came under his observation." (Italics deleted.) *Ulve v. Raymond, supra* at 253; . . . The controlling principle is whether the opinion evidence will assist the jury in correctly understanding matters that are not within their common experience. . . .

It is often difficult to apply the above standard to particular situations. *State v. Wigley,* 5 Wn. App. 465, 467, 488 P.2d 766 (1971). A comparison of two Washington appellate decisions, however, provides the solution to the present case. In *Wigley,* the court allowed a police officer to give his opinion that the defendant meant his threats seriously. The court noted that the police officer was personally acquainted with the defendant and had personally observed the incident. *Wigley,* at 466.

By contrast, in *State v. Haga,* 8 Wn. App. 481, 507 P.2d 159, *review denied,* 82 Wn.2d 1006 (1973), this court reversed a conviction because an ambulance driver was allowed to testify that the defendant had not shown the normal amount of grief over his wife's death. In *Haga* the ambulance driver based his opinion on his experience of 27 years responding to death scenes, and not on personal knowledge of the defendant. We noted that people react differently to sorrow or grief, and that in this instance the witness should have been limited to a statement of facts, leaving the jury free to form its own conclusions. *Haga,* at 491.

In the case at bench, the inference from the record is that Detective Nordlund had met Sargent for the first time when Sargent was questioned. His opinion concerning Sargent's reaction is not based on personal knowledge of the defendant. Detective Nordlund's statement was an improper opinion on the defendant's guilt or innocence. *See Haga.* It was error to permit the witness to state his impression.

EVIDENCE OF ASSAULT

The victim and Sargent had been married just over 1 year, and were experiencing marital difficulties. Just weeks before the homicide, Sargent told friends that he and his wife were considering a divorce. Over objection, the trial court permitted Dan VanderVelden to testify that 8 months prior to Lori's death, Sargent told him that he was upset because he hit his wife once during an argument. This incident prompted Sargent to attend counseling for his violent behavior. Sargent contends that VanderVelden's testimony about the argument was not admissible under ER 404(b). The State argues that the evidence was properly admitted to prove motive.

Evidence of prior bad acts is admissible only if relevant to a material issue before the jury. *State v. Goebel,* 36 Wn.2d 367, 378, 218 P.2d 300 (1950). Prior Washington law was adopted in ER 404(b), which states:

**(b) Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

It is within the discretion of the trial court to admit this type of evidence after determining that the probative value outweighs the prejudice to the defendant. *Goebel*, at 378–79; *State v. Jackson*, 102 Wn.2d 689, 693, 689 P.2d 76 (1984).

In admitting evidence of Sargent's statements, the trial court stated, "I believe that these alleged statements would be admissible because they would be probative of the intent, attitude and disposition of the defendant toward the victim . . ." We can discern no relationship between proof of Sargent's intent the night of the murder and an argument with his wife 8 months earlier. The trial court erred in admitting the testimony.

EVIDENCE OF PREMEDITATION

Sargent next contends that there is insufficient evidence to establish premeditation beyond a reasonable doubt. The standard for reviewing sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Italics omitted.) *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

To convict Sargent of first degree murder, the State is required to prove both intent and premeditation, which are not synonymous. *State v. Brooks*, 97 Wn.2d 873, 651 P.2d 217 (1982). The premeditation required "must involve more than a moment in point of time." RCW 9A.32.020. Premeditation is a question for the jury. *State v. Griffith*, 91 Wn.2d 572, 577, 589 P.2d 799 (1979). Here the jury

received WPIC 26.01, which is an appropriate instruction.[5]

"[P]remeditation can be proven by circumstantial evidence". *State v. Luoma*, 88 Wn.2d 28, 33, 558 P.2d 756 (1977). At Sargent's trial there was sufficient evidence to support a finding of premeditation. Michael Grubb, a criminalist, testified that the victim was struck by two blows to the head with some interval passing between them. Grubb and the medical examiner stated that the blood splattered on the wall indicated the victim was lying down and not looking at the defendant at the time he struck her. There was no evidence of any struggle.

This evidence indicates that the killing was not the result of a heated argument. There was sufficient time to pick up a weapon and deliver two separate blows to the victim while she was lying down facing away from the murderer. A rational trier of fact could have inferred premeditation from these facts. *Green.*

The judgment and sentence is reversed and the case is remanded for new trial.

GROSSE and WEBSTER, JJ., concur.

Reconsideration denied May 16, 1985.

---

[5]While Sargent argues that the instruction "more than a moment in time" is absurd, the defendant requested this instruction and cannot now claim it was error. *State v. Boyer*, 91 Wn.2d 342, 588 P.2d 1151 (1979).