[No. 22484–1–I.   Division One.   May 29, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. RAYMOND ONTARIO SCOTT, *Appellant.*

*Helen A. Anderson* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Marta Lowy, Deputy,* for respondent.

BAKER, J.—Raymond Ontario Scott appeals his conviction of one count of first degree robbery, alleging that the prosecutor improperly commented in closing argument on Scott's postarrest silence and failure to testify, in violation of his rights under U.S. Const. amend. 5 and Const. art. 1, § 9. We affirm.

## I

On the morning of March 22, 1988, Betty Kaminoff's tote bag containing her purse was grabbed from behind her as she walked toward a parking lot pay box at the corner of 8th and Pike in Seattle. She held on to the bag with both hands and screamed for help.

In the ensuing struggle over the purse, Ms. Kaminoff was knocked to the ground. She continued to hold on and was dragged on her back for approximately 20 feet. The robber made slashing motions and Kaminoff was left holding the cut straps of her purse. She sustained minor cuts and scrapes. The robber ran east toward the Paramount Theater.

A construction worker in the vicinity took Kaminoff to a construction trailer where the police were called. Kaminoff described the robber to the 911 operator as "a young, thin black man . . . late teens, early 20's . . . [wearing] dark clothing, but I—not sure if it was blue or not . . . tall and thin . . . probably around 5 foot 10 inches." Exhibit 7.

The victim's purse contained a money clip with about six $1 bills, a card case, and a wallet which contained two $20

bills, and some $10 and $5 bills. The tote bag contained her lunch, which included an orange.

Minutes later, a motorcycle officer in the area saw a man approximately 5 feet 10 inches tall, and approximately 160 pounds, wearing a knee length dark colored coat and a black or blue baseball cap, running next to the Paramount Theater. He then received a radio broadcast reporting the robbery and the suspect description Kaminoff had given. The officer began searching the area, and learned that a person fitting the description had run into a nearby apartment building.

Minutes later, officers in a patrol vehicle observed a man fitting the assailant's description running from the direction of the apartment building. When the officers approached, one of them saw the suspect, later identified as Scott, drop something over the freeway overpass. Scott had an orange in his hand. He was detained and placed in the patrol vehicle where one of the officers saw him try to sluff a knife which he had on his person.

Scott was taken to the construction trailer. Kaminoff was unable to identify Scott as the robber by his facial features, but did indicate that he was wearing the same clothing worn by the robber. The motorcycle officer identified Scott as the person he had observed running. Scott was placed under arrest and when he was searched at the police station, the officers found one $20 bill, four $10 bills, one $5 bill, and twelve $1 bills. Scott was read his rights, but declined to make a statement at that time.

Later, officers located Kaminoff's purse and her lunch in a vacant apartment in the building reportedly entered by the suspect. An orange was the only item missing from her lunch.

The next day, Detective Stewart, a robbery detective assigned to the case, interviewed Scott at the jail and asked him routine background questions. Scott interrupted and asked why he had been charged with a robbery. The detective declined to discuss the incident, asking Scott to wait

until after he had finished gathering the background information and the detective could advise Scott of his rights. After the background interview was completed and Scott was advised of his rights, Scott again initiated conversation regarding the incident. He asked why a robbery detective had been assigned to his case. The detective replied that it was because a knife had been used. Scott became irate and said, "[D]idn't nobody use no knife." The detective then asked how the victim had been injured and Scott replied that she must have scraped herself when she fell to the ground. At that point the detective had not told Scott that the victim had fallen to the ground. Scott declined to discuss the incident further.

In closing argument, defense counsel argued that the State had failed to meet its burden of proof, arguing that the evidence introduced by the State was weak or could be explained in a manner consistent with Scott's innocence. He argued that the State had failed to produce a key piece of evidence—Scott's fingerprints on the purse—contending that the State's explanation for the failure to present this evidence, that is, that the purse was handled by a number of police officers, was inadequate.

In rebuttal, the prosecutor said, "If there had been the defendant's fingerprints on the purse wouldn't you have heard from him about that?" Defense counsel objected and asked for a side bar, which was unreported.[1]

The prosecutor then resumed her argument:

> If there had of [sic] been fingerprints on that purse what would Mr. Scott have said to the officer when he was talking to him or to Detective Stewart when he was talking to him, or what would Mr. Girard have said to you? I suggest to you you probably would have heard something like "I found the purse in this apartment and I turned it in." I mean every piece of evidence that we can come up with they can come up with and say there is something else here that wasn't proved.

---

[1]Evidently, defense counsel's objection was not sustained. The jury was not given any curative instruction.

Defense counsel did not object further and no request was made on the record for an instruction that the jury disregard the prosecutor's statements.

## II

Scott contends that the prosecutor's comments deprived him of a fair trial since they suggested guilt could be inferred from his failure to testify and from his postarrest silence following *Miranda* advisement. Such an error, he asserts, is presumed prejudicial. Moreover, because the jury was not instructed to disregard the prosecutor's remarks, and because the evidence was entirely circumstantial and capable of more than one explanation, Scott argues the error was in fact prejudicial. He asserts that his conviction should be reversed and his case remanded for a new trial.

The State replies that the prosecutor's comments did not suggest impermissible inferences, and were a fair reply to defense counsel's argument. The State asserts that even if the statements were improper, Scott waived any error by his failure to request a curative instruction.

A. Postarrest Silence.

The State may not, consistent with due process, use postarrest silence following *Miranda* warnings to impeach a defendant's testimony at trial. *State v. Belgarde,* 110 Wn.2d 504, 511, 755 P.2d 174 (1988) (citing *Doyle v. Ohio,* 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976)). The *Doyle* principle, relating to cross examination, applies with equal force to comments made in closing argument. *State v. Fricks,* 91 Wn.2d 391, 396, 588 P.2d 1328 (1979); *State v. Seeley,* 43 Wn. App. 711, 715, 719 P.2d 168, *review denied,* 107 Wn.2d 1005 (1986); *see State v. Cosden,* 18 Wn. App. 213, 220, 568 P.2d 802 (1977), *review denied,* 89 Wn.2d 1016, *cert. denied,* 439 U.S. 823 (1978). The rationale of the *Doyle* rule is that silence in the wake of *Miranda* warnings may be only an exercise of the right to remain silent, and is therefore "insolubly ambiguous", and does not necessarily tend to show a fabricated defense. *Doyle,* 426 U.S. at 617.

However, where a defendant waives the right to remain silent and makes a partial statement to police, the State may use the statement to impeach the defendant's inconsistent trial testimony. *Belgarde,* 110 Wn.2d at 511. Such partial silence is not insolubly ambiguous and may properly impeach the subsequent defense. *Cosden,* 18 Wn. App. at 221.

Here, while speculating what Scott's defense might have been if his fingerprints had been found on the purse, the State suggested that Scott might have told the detective that he had found the purse in an apartment and turned it in. Of course such a defense would have been completely unbelievable since the purse was found by the police.

█ Notwithstanding the prosecutor's speculation as to a possible defense theory, there was no due process violation here. The defense theory raised by Scott in closing argument was inconsistent with the partial statement that he volunteered to the detective. The theory he argued in closing was mistaken identity, whereas Scott had told the detective that no robbery had occurred because no knife had been used. Scott's statement and his partial silence created an inference that his theory at trial was fabricated, permitting the State to so argue. We see no reason why the State's right to comment upon inconsistencies between a defendant's post–*Miranda* "partial silence" and trial testimony by the defendant does not extend, with equal logic, to inconsistencies between such partial silence and defense theories pursued at trial without actual testimony from the defendant.

Thus, the prosecutor's comments on Scott's partial post-arrest silence did not deprive him of a fair trial.

B. <u>Failure To Testify</u>.

A defendant's Fifth Amendment rights are violated if a prosecutor makes a statement "of such character that the jury would naturally and necessarily accept it as a comment on the defendant's failure to testify." *State v. Sargent,* 40 Wn. App. 340, 346, 698 P.2d 598 (1985) (quoting *State v.*

*Crawford,* 21 Wn. App. 146, 152, 584 P.2d 442 (1978), *review denied,* 91 Wn.2d 1013 (1979)). Although drawing attention to a defendant's failure to testify is constitutional error, *see Griffin v. California,* 380 U.S. 609, 615, 14 L. Ed. 2d 106, 85 S. Ct. 1229, 1233 (1965), it is permissible for the State to argue that certain evidence is undenied and undisputed, without reference to who may have denied it. *Sargent,* 40 Wn. App. at 346.

In *Sargent,* the prosecutor stated in closing argument that if the defendant had known of other possible suspects, the jury would have heard about them. This court held the argument was constitutional error. *Sargent,* 40 Wn. App. at 346–47. *Sargent* is distinguishable, however. Here, the prosecutor argued that Scott would have produced an exculpatory explanation for any evidence the State might have presented, including fingerprints, and the jury would have heard that explanation, either from Scott or from his counsel. The prosecutor's argument was conjecture upon conjecture, since the jury knew there never was any fingerprint evidence for Scott to explain with testimony or argument. Whereas in *Sargent* the prosecutor remarked that the defendant had not asserted positive exculpatory evidence, here the prosecutor hypothesized that Scott would have inevitably refuted any evidence which might have been produced. Thus, the jury herein would have easily recognized that the prosecutor was merely conjecturing, and would not have been led to make the dangerous inference that Scott's silence implied his guilt. *See Griffin v. California,* 380 U.S. at 613–15.

Under these circumstances, we hold that the jury would not "naturally and necessarily" accept the prosecutor's

remarks as an impermissible comment on the defendant's failure to testify. Therefore, no error occurred.

Affirmed.

COLEMAN, C.J., and WINSOR, J., concur.