# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47392-5-II |
| Respondent, | |
| v. | |
| KENNETH ARCHIE PEEBLES, JR. | UNPUBLISHED OPINION |

MELNICK, J. – Kenneth Archie Peebles, Jr. appeals his conviction of child molestation in the first degree. We hold that sufficient evidence existed to show that Peebles engaged in sexual contact with the victim and that an inadvertent reference to DNA[1] evidence did not result in prejudice. Additionally, the prosecuting attorney argued legitimate inferences from the evidence during closing argument and any misstatements were not prejudicial. Finally, defense counsel's decision not to object to the DNA reference and the prosecuting attorney's closing argument did not constitute ineffective assistance, and that cumulative error did not deprive Peebles of a fair trial. We affirm his conviction.

---

[1] Deoxyribonucleic acid.

FACTS

When Peebles arrived at Jeremy Parrish's home to pick up some mail, Parrish invited his longtime friend to dinner. Parrish's eight-year-old daughter AP was staying with her father and knew Peebles. Peebles and Parrish drank home brewed beer and they eventually decided that Peebles should stay the night because he had been drinking.

AP went to bed before the adults. She wore shorts, underwear, and a T-shirt to bed. AP awoke when she felt Peebles lie down beside her. He laid on his side facing her back. AP felt Peebles's hand touching her buttocks and the area below her hip. His hand was inside her shorts but outside her underwear. She moved his hand and went back to sleep. She awoke a second time when Peebles touched her in the same places and in her vaginal area.

AP then got out of bed and woke her father. When she told him what Peebles had done, Parrish got up and found Peebles asleep in another room. Parrish woke Peebles and drove him home. Peebles seemed unsteady but entered his house unassisted.

The next day Parrish told AP's mother about the incident and she called the police. AP described the touching to her mother and to professionals who examined and interviewed her.

The State charged Peebles with child molestation in the first degree. It sought to introduce DNA evidence obtained from AP's shorts that revealed two separate male DNA profiles; however, the defense moved before trial to exclude that evidence because the DNA test concluded that "the sample was not suitable for comparison purposes." Clerk's Papers (CP) at 27. The trial court granted the motion to exclude any reference to DNA evidence.

At trial, AP and her parents testified to the facts cited above. AP's mother also testified that AP told her that Peebles touched her buttocks twice. Parrish stated that AP told him that Peebles crawled into bed with her and pulled down her pants twice, though he admitted telling a

deputy that AP said Peebles pulled her pants down once. Parrish also told the deputy that AP denied being touched in her private parts.

Deputy Jason Smith testified about going to Parrish's house and collecting the clothing that AP had worn to bed. This clothing was placed into three envelopes that were admitted into evidence. When the prosecutor asked Smith to identify the contents of each envelope, she also asked about the contents of a packet in the first envelope. Smith replied, "It's some sort of test, DNA test." IV Report of Proceedings (RP) at 174. The prosecutor then asked about the second envelope without further reference to DNA.

After excusing the jury for the day, the trial court addressed the DNA issue sua sponte. The prosecutor apologized for the inadvertent reference to DNA evidence, explaining that she had no idea that the DNA test was in the packet. The prosecutor added that the defense was entitled to a limiting instruction. After considering the matter overnight, defense counsel decided against an instruction that would highlight the DNA issue.

A deputy prosecutor who attended an interview with AP testified that the child stated Peebles had touched her "chest, bottom, and front." V RP at 293. Peebles testified that after drinking two high-alcohol beers with Parrish, he could only remember eating dinner and then waking up in his own home the next morning. He stated that he was shocked when Parrish told him about AP's allegations, but he explained that he could not deny molesting AP because of his intoxication that evening.

The jury found Peebles guilty as charged and the trial court imposed a standard range sentence of 58 months. Peebles appeals his conviction.

ANALYSIS

I.    SUFFICIENCY OF THE EVIDENCE

Peebles argues that insufficient evidence existed to prove that he touched AP for the purpose of sexual gratification. We disagree.

Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

In determining whether the necessary quantum of proof exists, we need not be convinced of the defendant's guilt beyond a reasonable doubt, but only that substantial evidence supports the State's case. *State v. Fiser*, 99 Wn. App. 714, 718, 995 P.2d 107 (2000). Credibility determinations are for the trier of fact and are not subject to review. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). We must defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).

To convict Peebles of child molestation in the first degree, the jury had to find beyond a reasonable doubt that he had sexual contact with AP, that AP was less than 12 years old at the time and not married to Peebles or in a domestic partnership with him, that AP was at least 36 months younger than Peebles, and that the act occurred in Washington. The trial court instructed the jury that "[s]exual contact means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desires of either party." CP at 70 (Instr. 6). Sexual gratification

4

is not an essential element of the crime of child molestation in the first degree. *State v. Lorenz*, 152 Wn.2d 22, 36, 93 P.3d 133 (2004). Rather, it is a definitional term that clarifies the meaning of sexual contact. *Lorenz*, 152 Wn.2d at 36.

"'Proof that an unrelated adult with no caretaking function has touched the intimate parts of a child supports the inference the touch was for the purpose of sexual gratification,'" although courts require additional proof of sexual purpose when clothes cover the intimate part touched. *State v. Harstad*, 153 Wn. App. 10, 21, 218 P.3d 624 (2009) (quoting *State v. Powell*, 62 Wn. App. 914, 917, 816 P.2d 86 (1991)). Peebles does not dispute that the touching of AP occurred on her intimate parts. *See In re Welfare of Adams*, 24 Wn. App. 517, 520, 601 P.2d 995 (1979) (buttocks, hips and lower abdomen may be intimate parts of the anatomy). He argues, however, that the State failed to provide the additional proof needed to establish that the touching occurred for the purpose of sexual gratification.

The *Harstad* court held such proof existed because the defendant rubbed the victim's upper thigh back and forth while engaging in heavy breathing. 153 Wn. App. at 22-23. This touching occurred at night while everyone else in the household slept. *Harstad*, 153 Wn. App. at 21. But we concluded in *Powell* that the purpose of the defendant's fleeting touches of the victim's chest, bottom, and thighs was equivocal and capable of innocent explanation. 62 Wn. App. at 917-18. This touching occurred as the defendant hugged the victim, lifted her off his lap, and sat with her in his truck. *Powell*, 62 Wn. App. at 917-18. The evidence was insufficient to support the inference that this touching outside the victim's clothing occurred for the purpose of sexual gratification. *Powell*, 62 Wn. App. at 918.

Here, the evidence is less ambiguous than in *Powell* and more similar to the touching in *Harstad*. The State provided testimony that the touching occurred in AP's bed while she and the

rest of the household slept. After AP felt Peebles touch her buttocks, she removed his hand from inside her shorts, only to again feel him touch her buttocks as well as her vaginal area. This touching is not capable of innocent explanation. *See State v. Whisenhunt*, 96 Wn. App. 18, 24, 980 P.2d 232 (1999) (defendant's touching of victim's vaginal area three times was "not open to innocent explanation"). For the foregoing reasons, sufficient evidence existed to establish an inference that the touching of the victim's intimate areas over her clothing occurred for the purpose of sexual gratification.

## II.     PROSECUTORIAL MISCONDUCT

Peebles next argues that the prosecutor committed misconduct during direct examination of a witness and during closing argument, and that this misconduct deprived him of a fair trial. We disagree.

A defendant has a fundamental right to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 22 of the Washington Constitution. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 703, 286 P.3d 673 (2012). Prosecutorial misconduct can deprive a defendant of this constitutional right. *Glasmann*, 175 Wn.2d at 703-04.

To prevail on a prosecutorial misconduct claim, a defendant must prove that the prosecutor's conduct was both improper and prejudicial. *Glasmann*, 175 Wn.2d at 704. Prejudice is established if there is a substantial likelihood that the misconduct affected the jury's verdict. *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003). If the defendant did not object at trial, he is deemed to have waived any error unless the misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012).

A.     Disclosure of DNA Evidence

Peebles argues that the prosecutor should have realized that her question to Deputy Smith about the contents of a packet inside an exhibit would elicit prohibited testimony about DNA test results. The State responds that after the inadvertent remark about the fact of a DNA test occurred, the parties and the court took the appropriate remedial steps to eliminate the possibility of any further DNA reference and thereby eliminated any potential prejudice. We agree with the State.

Although defense counsel did not object when Deputy Smith testified that the packet contained "some sort of test, DNA test," the trial court addressed the issue sua sponte. IV RP at 174, 176. The prosecutor apologized and explained that she had no idea that the DNA test was in the packet, thinking instead that it might have contained the victim's barrette. Both the trial court and defense counsel accepted her explanation and admitted that they had thought it was a dehumidifier packet. The court and the parties subsequently removed the DNA test and relabeled the exhibit.

We decline to find misconduct in the inadvertent violation of the trial court's pretrial ruling excluding DNA evidence.[2]

B.     Closing Argument

Peebles's remaining claims of prosecutorial misconduct concern statements made during closing argument. Peebles complains that in five separate instances, the prosecutor personally vouched for AP's credibility, expressed her personal knowledge of the facts of the case, and impugned Peebles's credibility.

---

[2] The witness merely mentioned a DNA test. The actual test and its conclusions were never revealed to the jury.

We review a prosecutor's comments during closing argument in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. *State v. Jones*, 144 Wn. App. 284, 290, 183 P.3d 307 (2008). "'A prosecutor has wide latitude in closing argument to draw reasonable inferences from the evidence and to express such inferences to the jury.'" *Jones*, 144 Wn. App. at 290 (quoting *State v. Boehning*, 127 Wn. App. 511, 519, 111 P.3d 899 (2005)).

It is improper for a prosecutor personally to vouch for the credibility of a witness. *State v. Brett*, 126 Wn.2d 136, 175, 892 P.2d 29 (1995). Vouching is not based on evidence and occurs when the prosecutor places the government's prestige behind the witness or indicates that information not presented to the jury supports the witness's testimony. *State v. Allen*, 161 Wn. App. 727, 746, 255 P.3d 784 (2011). "Just as it is improper for a prosecutor personally to vouch for the credibility of a witness, it is improper for a prosecutor to personally vouch against the credibility of a witness." *State v. Horton*, 116 Wn. App. 909, 921, 68 P.3d 1145 (2003) (internal quotation marks omitted). But prejudicial error will not be found unless it is "'clear and unmistakable' that counsel is expressing a personal opinion" rather than arguing an inference from the evidence. *Brett*, 126 Wn.2d at 175 (quoting *State v. Sargent*, 40 Wn. App. 340, 344, 698 P.2d 598 (1985)). A prosecutor may freely comment on witness credibility based on the evidence. *Allen*, 161 Wn. App. at 746.

Peebles argues that the prosecutor vouched against his credibility in two sets of comments that occurred during the first part of her closing argument. The first set is as follows:

[PROSECUTOR]: What does alcohol not do? It does not make a criminal act not criminal. Claims of alcoholic blackout are self-reported. They obviously have an insensitive [sic], and they're seeking to avoid responsibility for their deviant behavior. This claim of alcoholic blackout is a farce. Being drunk is one thing. What he's claiming is something entirely different, that after two beers he blacks out, can't remember anything. That's just ridiculous, ladies and gentlemen. It's the claim--

[DEFENSE COUNSEL]: I'd object to that characterization, Your Honor.

[THE COURT]: It's argument, Counsel. Your objection is noted for the record.

[PROSECUTOR]: The defendant's claim and his version is ridiculous, and it's not supported by the evidence in any single way.

VI RP at 377.

During opening statement, defense counsel told the jury that Peebles drank so much that night that he was incoherent and passed out in the bed in which Parrish found him. Peebles testified that he was so intoxicated that he could not remember what happened after dinner on the night in question. The trial court instructed the jury that while evidence of voluntary intoxication does not make an act less criminal, the jury could consider intoxication in determining whether Peebles acted for the purpose of satisfying either party's sexual desires.

The State's argument was a comment on the defense's theory and on Peebles's credibility that was based on the evidence and the total argument. *See State v. Copeland*, 130 Wn.2d 244, 290-91, 922 P.2d 1304 (1996) (use of word "liar" as comment on defendant's credibility was not improper where prosecutor was drawing inference from evidence). Even if the references to the defense theory as a farce and as ridiculous were improper, they were not prejudicial. It was not clear that the prosecutor expressed a personal opinion rather than drawing an inference from the evidence. *See Horton*, 116 Wn. App. at 921 (misconduct was unmistakable where prosecutor told jury that he believed the defendant lied).

9

Peebles next complains of this statement:

> So at the end of this, ladies and gentlemen, do you have an abiding belief in the truth of this charge? Do you have an abiding belief that [AP is] telling the truth? Do you have an abiding belief that when [AP] sat on the stand on Tuesday and she looked at you and told you what happened to her, did you believe her? And there's no reason not to.

VI RP at 378. Defense counsel did not object to this statement. We view this argument as a comment based on the evidence that did not constitute misconduct.

Peebles also complains of statements made during the State's rebuttal argument. The first began with a reference to Peebles and his ability to leave the Parrish home, set his alarm at his own home, and proceed with his normal routine the following day despite his alleged intoxication.

> He has that ability to understand [Parrish's] instructions, to get out of Dodge after he's been caught and to feign intoxication because he's trying to avoid criminal responsibility, just like he did yesterday when he testified and this morning when he testified. Because he's trying to evade criminal responsibility for what he did to [AP].
> [Defense counsel] said--was discussing a scheme, this scheme that he had that he concocted and how that . . . was sort of a silly idea. Well, frankly, the defendant's scheme almost worked. If it wasn't for [AP's mother], we wouldn't be here. Jeremy Parrish wasn't going to call law enforcement. He didn't call law enforcement. [AP's mother] called law enforcement. So quite frankly, [Peebles's] scheme, it almost worked. And it almost worked because of the 20-year relationship he has with a man who is like his brother.

VI RP at 393-94.

Defense counsel did not object. The statements are based on inferences from the evidence as well as defense counsel's closing argument where he argued that one act of accidental touching from a drunken man did not constitute sexual contact. We see no misconduct in the statements highlighted above.

10

Finally, Peebles complains of this statement: "Voluntary intoxication, this is the defendant's attempt just to evade justice." 6 RP 397. Again, defense counsel did not object. Because it is not clear and unmistakable that the prosecutor was asserting her personal opinion rather than arguing an inference from the evidence, we reject this claim of misconduct as well. Peebles's argument that prosecutorial misconduct deprived him of a fair trial fails.

III.    INEFFECTIVE ASSISTANCE OF COUNSEL

Peebles argues that he received ineffective assistance of counsel when his attorney failed to object to the above statements and to the prosecutor's elicitation of DNA testimony. We disagree.

To prove a claim of ineffective assistance of counsel, a defendant must show that his attorney's performance fell below an objective standard of reasonableness and that this deficiency prejudiced the defendant. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). Prejudice results when it is reasonably probable that but for counsel's errors, the result of the proceeding would have been different. *Thomas*, 109 Wn.2d at 226. We strongly presume that defense counsel's performance was effective. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). We need not address both prongs of the ineffective assistance of counsel test if the defendant makes an insufficient showing on one prong. *State v. Garcia*, 57 Wn. App. 927, 932, 791 P.2d 244 (1990). Because claims of ineffective assistance of counsel present mixed questions of law and fact, we review them de novo. *In re Pers. Restraint of Brett*, 142 Wn.2d 868, 873, 16 P.3d 601 (2001).

When counsel's strategy can be characterized as legitimate trial strategy, it cannot provide a basis for an ineffective assistance of counsel claim. *State v. Aho*, 137 Wn.2d 736, 745, 975 P.2d

11

512 (1999). The decision of whether to object is a clear example of trial strategy. *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). To prevail on an ineffective assistance of counsel claim based on the failure to object, the defendant must show (1) an absence of legitimate strategic or tactical reasons for failing to object; (2) that the objection likely would have been sustained if raised; and (3) that the result of the trial would have been different had the evidence not been admitted. *State v. Saunders*, 91 Wn. App. 575, 578, 958 P.2d 364 (1998).

Having already held that the deputy's statement about the DNA test was not prejudicial error in the context of Peebles's prosecutorial misconduct claim, we need not repeat that analysis in this context. And, having held that none of the closing argument statements to which defense counsel did not object constituted misconduct, we cannot conclude that counsel's failure to object was deficient. *See In re Pers. Restraint of Cross*, 180 Wn.2d 664, 721, 327 P.3d 660 (2014) (defense counsel's failure to object to prosecutor's closing argument generally will not constitute deficient performance). We reject Peebles's claim of ineffective assistance of counsel.

IV.     CUMULATIVE ERROR

Finally, Peebles argues that the cumulative effect of the errors he has identified deprived him of a fair trial. We disagree.

Under the cumulative error doctrine, a reviewing court may reverse a defendant's conviction when the combined effect of trial errors denied him a fair trial, even if each error alone would be harmless. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006). The doctrine does not apply where the errors are few and have little or no effect on the trial's outcome. *Weber*, 159 Wn.2d at 279. We see no accumulation of error that deprived Peebles of a fair trial, and we reject his claim of cumulative error.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Maxa, P.J.

_____
Sutton, J.