# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54206-4-II |
| Respondent, | |
| v. | |
| CHRISTOPHER DECICIO, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — Christopher Decicio appeals his conviction for assault in the third degree. He argues that because the prosecutor committed misconduct by making improper statements during closing argument, he was deprived of the right to a fair trial. He also argues that the court abused its discretion by imposing community custody conditions that are not crime related. We affirm Decicio's conviction and the challenged community custody conditions.

## FACTS

On May 28, 2019, Lucas Anderson called 911 to report that his neighbor, later identified as Decicio, had punched him in the face with metal knuckles, pointed a gun at his head, and hit him with the gun after accusing him of driving recklessly. The responding officer arrived approximately 15 minutes after Anderson's call and, in his patrol car, searched the neighborhood for Decicio. After failing to find Decicio, the officer sought out Anderson. The officer observed and photographed redness and swelling near Anderson's left eye. After speaking with Anderson, the officer attempted to locate Decicio at his home, but noticed that Decicio's car was gone. The officer then observed Decicio driving down the street towards his home. The officer, still in his

patrol vehicle, attempted to signal Decicio with his hand and yelled out to Decicio that he wanted to speak with him. Decicio did not respond to or acknowledge the officer, pulled into his garage, and shut the garage door. Decicio did not respond to law enforcement attempts to have him surrender. After utilizing a special weapons and tactics (SWAT) unit, officers eventually placed Decicio under arrest.

After the police arrested him, Decicio spoke with Detective Danielle Drogmund and told her that he had been home all day. The police searched the house but were unable to find either the gun or the brass knuckles.

At trial, Anderson testified that he passed Decicio's home when he was driving down the road on the way to his own home; he came to a stop because Decicio's dogs were in the roadway. When Anderson stopped, Decicio approached and accused him of driving inappropriately in a "Shelby Mustang." Report of Proceedings (RP) at 35. Anderson denied owning a Shelby Mustang. Decicio then hit Anderson in the face with his left hand while wearing metal knuckles, causing injury to Anderson's face. Decicio pulled a pistol from inside his sweatshirt/sweater with his right hand, cocked it, and then put it in Anderson's face. Anderson then put his car in drive and began driving away, but as he did so Decicio hung onto the window and struck Anderson two times with the pistol. Upon arriving home, Anderson called 911 and reported the incident.

Decicio also testified. He admitted that he had had a confrontation with Anderson, but he denied having brass knuckles or a firearm and denied assaulting Anderson. He testified that Anderson drove up the road while he was walking his dogs to the mailbox, and that Anderson yelled at Decicio about his dogs running loose. After they exchanged heated words, Decicio walked away. Shortly thereafter, he left to go to the casino, which is about 20 miles from his home. When he returned and was driving on his street, he saw a truck coming towards him on the

2

road and drove directly into the garage. He did not know that an officer was trying to stop or talk to him. Decicio also testified that he took some medication and did not know that SWAT officers were trying to get him to surrender.

At closing, the State summarized the evidence then stated, "So, those are the facts, but as a jury you are the ultimate deciders of the facts, what it is. It's up to you to determine what the facts are. That's your job as a juror, determine what the facts are and then take those facts and incorporate into the law and come up with a verdict." RP at 154. The prosecutor continued:

> But, in evaluating the testimony, we're looking at one person or some people saying one thing and someone else saying another. So, you're looking at an issue of credibility. You're looking at an issue of deciding who is telling the truth and who is not telling the truth. And when you decide who is telling the truth and who is not telling the truth, that's a pretty big indication that the person not telling the truth, if he's the defendant, is guilty, right?

RP at 155-56.

The prosecutor then discussed the instruction informing the jury members that they were the sole judges of the credibility of witness testimony. He reiterated the ways by which the jury could evaluate truthfulness of witness testimony enumerated in the instruction:

> The opportunity of the witness to observe and know what they're testifying about, the ability of the witness to observe accurately, the quality of the witness's memory, the manner of witnesses while testifying, personal interest that the witness may have in the outcome of the case, any bias or prejudice shown by the witness, the reasonableness of the witness's statements in context with all the other evidence."

RP at 156.

The prosecutor then discussed how the factors applied to the testimony in the instant case including quality of Decicio's memory, the personal interest of Anderson and law enforcement. He then discussed the reasonableness of the witness statements in context of the evidence of Anderson's physical injury, stating:

3

Mr. Anderson had just called 911. It took [law enforcement] ten, fifteen minutes to get there to the scene. Where did this injury come from? There's only one person it could have come from, ladies and gentlemen, and that's the defendant. That's the only person he had contact with, the only person. And he got this injury. And he got this injury in the spots where he said the defendant had struck him and shoved the gun into his face. That's where he got this injury.

So, we know, we know that Mr. Anderson is telling the truth and the defendant isn't.

RP at 159. Decicio did not object. The prosecutor then discussed Decicio's claim that he was unaware of the first responding officer attempting to speak with him or the SWAT unit's efforts to get him out of the house.

Now, to believe the story of the defendant, here's what you have to do. First of all, you have to take your common sense and just heave it out the door. That's your first step. But then you have to believe that there is this conspiracy, a conspiracy between Corporal Clark, Mr. Anderson, Detective Drogmund to get the defendant, because according to the defendant's testimony, what he said happened . . . He couldn't remember what he said to [Drogmond], but then he had a completely different story than Mr. Anderson and he had a completely different story than [the responding officer].

So, to believe the defendant you have to believe that this was a big conspiracy against him to basically frame him maybe, for whatever reason. But, ladies and gentlemen, there is absolutely no reason whatsoever to do that. Why would you want to frame a person?

RP at 162.

The jury found Decicio guilty of the lesser charge of assault in the third degree. The court sentenced Decicio to 45 days as a first offender and imposed community custody conditions. Decicio appeals.

## ANALYSIS

I.    PROSECUTORIAL MISCONDUCT

Decicio argues that the prosecutor committed reversible misconduct because he improperly vouched for Anderson's credibility, expressed his personal opinion about Decicio's guilt, and

improperly implied that in order to acquit Decicio, the jury needed to believe in a conspiracy theory and that the State's witnesses lied or were not truthful. We disagree.

A.      Legal Principles

To prevail on a claim of prosecutorial misconduct, a defendant bears the burden of showing that the comments were improper and that they were prejudicial. *State v. Loughbom*, 196 Wn.2d 64, 70, 470 P.3d 499 (2020). In assessing whether a prosecutor's closing argument was improper, we recognize that the prosecutor has "wide latitude to argue reasonable inferences from the evidence, including evidence respecting the credibility of witnesses." *State v. Thorgerson*, 172 Wn.2d 438, 448, 258 P.3d 43 (2011).

If the defendant fails to object to the improper statement at trial, the error is waived "unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). To prevail, the defendant must show (1) no curative instruction would have removed any prejudicial effect on the jury and (2) there is a substantial likelihood that the misconduct affected the jury's verdict. *Id.* at 761. The reviewing court focuses less on whether the State's misconduct was flagrant and ill intentioned and more on whether the resulting prejudice could have been cured. *Id.* at 760-61.

B.      Prosecutor's Personal Belief

It is improper for a prosecutor to state a personal belief about the credibility of a witness or to vouch for a witness's credibility. *State v. Warren*, 165 Wn.2d 17, 30, 195 P.3d 940 (2008). Whether a witness has testified truthfully is entirely for the jury to determine. *State v. Ish*, 170 Wn.2d 189, 196, 241 P.3d 389 (2010). However, in closing argument the State has wide latitude in drawing reasonable inferences from the evidence, including commenting on the credibility of

witnesses based on evidence in the record. *State v. Millante*, 80 Wn. App. 237, 250, 908 P.2d 374 (1995). We will not find prejudicial error "unless it is 'clear and unmistakable' that counsel [was] expressing a personal opinion." *State v. Brett*, 126 Wn.2d 136, 175, 892 P.2d 29 (1995) (quoting *State v. Sargent*, 40 Wn. App. 340, 344, 698 P.2d 598 (1985)).

Decicio argues that the prosecutor personally vouched for Anderson's veracity and expressed his personal opinion about Decicio's guilt in the following argument:

> There's only one person [the injury] could have come from, ladies and gentlemen, and that's the defendant. That's the only person he had contact with, the only person. And he got this injury. And he got this injury in the spots where he said the defendant had struck him and shoved the gun into his face. That's where he got this injury.
> So, we know, we know that Mr. Anderson is telling the truth and the defendant isn't.

RP at 159.

Decicio cites to *Sargent*, where the prosecutor vouched for a particular witness, stating several times, "I believe [the witness]." 40 Wn. App. at 343. This court held the prosecutor's comments were prejudicial error because they (1) bolstered the credibility of the only witness directly linking Sargent to the crime and (2) the comments could not have been cured with an appropriate instruction. *Id*. at 345.

The prosecutor's statement in this case is not analogous to the multiple comments made by the prosecutor in *Sargent*. It is not "'clear and unmistakable'" that the prosecutor was expressing personal belief as to Anderson's credibility. *Brett*, 126 Wn.2d 175 (quoting *Sargent*, 40 Wn. App. 344). Rather, the prosecutor was making an argument based on reasonable inferences from the evidence. Specifically, he referred to facts in the record to demonstrate that Anderson's testimony was credible and that he had no motive to lie. The statement was not improper.

6

Additionally, in contrast to *Sargent*, any prejudice could have been cured with an appropriate admonition to the jury, had one been requested. *See Emery*, 174 Wn.2d at 761.

The challenged statement also does not express the prosecutor's personal belief about Decicio's guilt. Decicio attempts to analogize to *State v. Monday*, arguing that the prosecutor here, like in *Monday*, committed misconduct by improperly commenting on "the guilt and veracity of the accused." 171 Wn.2d 667, 677, 257 P.3d 551 (2011). However, he fails to explain how the prosecutor's statement here and the statements at issue in *Monday* are similar. In *Monday*, the court determined that the prosecutor flagrantly or apparently intentionally appealed to racial bias in a way that undermined the defendant's credibility or the presumption of innocence as well as stating that all good prosecutors believe "that the word of a criminal defendant is inherently unreliable." *Id*. at 674, 680. *Monday* is not analogous. The statement here is neither as pervasive, nor as egregious as those in *Monday*.

Decicio also cites to *In re Personal Restraint of Glasmann*, where the court held that a prosecutor committed reversable misconduct by stating his opinion on the defendant's guilt. 175 Wn.2d 696, 713, 286 P.3d 673 (2012). Specifically, the prosecutor used a PowerPoint presentation during closing argument that had the word GUILTY in bright red letters superimposed three times on the defendant's booking photo. *Id*. at 706. The prosecutor's statement here is not at all like the Prosecutor's comments in *Glasmann*. There is no suggestion of a personal opinion about Decicio's guilt; the prosecutor argued a reasonable inference from the evidence about Decicio's credibility as a witness.

As with the argument that the prosecutor vouched for Anderson's credibility, the statement is not an improper comment on Decicio's guilt. Most importantly, any prejudice could have been cured with an appropriate instruction had one been requested. *Emery*, 174 Wn.2d at 761.

7

It should be noted that saying "we know" in some instances could be considered improper vouching or an improper statement of personal belief. However, it is not improper when used to marshal evidence and draw reasonable inferences from it. *See State v. Robinson*, 189 Wn. App. 877, 894-95, 359 P.3d 874 (2015) (discussing cases from other jurisdictions where the prosecutor's use of "we know" implied special knowledge not shared with the jury, or was an attempt to align the jury against the defendant on racial or socioeconomic grounds). We determine that the prosecutor's statement was not misconduct.

C.      Lying or Mistaken

Lastly, Decicio argues that the prosecutor improperly implied that the jury must find that Decicio lied or was mistaken in order to acquit. We disagree.

The prosecutor went over portions of the testimony of other witnesses and pointed out the contradictions between that testimony and Decicio's. It was in this context that the prosecutor then argued: "Now, to believe the story . . . you have to believe that there is this conspiracy, a conspiracy between Corporal Clark, Mr. Anderson, Detective Drogmund . . . to basically frame him. . . . But, ladies and gentlemen, there is absolutely no reason whatsoever to do that." RP at 162.

Washington courts recognize that it is improper for the State to argue that in order to acquit the defendant or believe his testimony, the jury must find that the State's witnesses are lying. *State v. Vassar*, 188 Wn. App. 251, 260, 352 P.3d 856 (2015). Such argument presents the jury with "a false choice between believing the State's witnesses or acquitting [the defendant]," by misstating the law and misrepresenting the jury's role and burden of proof. *State v. Wright*, 76 Wn. App. 811, 824-25, 888 P.2d 1214 (1995) *superseded by statute on other grounds by* RCW 9.94A.360(6).

8

However, we need not determine whether or not the prosecutor's comment improperly misrepresented the jury's role and the burden of proof because Decicio entirely fails to address whether the statements were so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice, as is his burden to demonstrate.[1] *Emery*, 174 Wn.2d at 761. The jury instructions instructed the jury to disregard any comments by the lawyers that are not supported by the law. The jury is presumed to follow the court's instructions. *State v. Kirkman*, 159 Wn.2d 918, 928, 155 P.3d 125 (2007). We conclude that Decicio has not met his burden to show prosecutorial misconduct.

## II. COMMUNITY CUSTODY CONDITIONS

Decicio argues that the court abused its discretion in by setting community custody conditions "relat[ing] to home and work" because they were not related to the crime for which he was convicted. Br. of Appellant at 14. Decicio fails to adequately support this argument with either a clear identification of the challenged conditions or reasoned argument and we decline to address it. *State v. Hathaway*, 161 Wn. App. 634, 650, n.10 251 P.3d 253 (2011) (passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration).

---

[1] Even if Decicio did show that he was prejudiced by the prosecutor's opening statements, an instruction could have cured any resulting prejudice. In *State v. Riley*, 69 Wn. App. 349, 351, 848 P.2d 1288 (1993), during closing argument, the prosecutor argued that in order to believe defendant's story, the jury would have to disbelieve the testimony of the police officers. The court held that the misconduct was not so egregious that resulting prejudice could not have been remedied by a curative instruction. *Id.* at 354.

Similarly, in *State v. Barrow*, 60 Wn. App. 869, 874, 809 P.2d 209 (1991), the court concluded that an instruction could have cured any prejudice resulting from the prosecutor's statement during closing argument: "in order for you to find the defendant not guilty on either of these charges, you have to believe his testimony and you have to completely disbelieve the officers' testimony. You have to believe that the officers are lying." *Id.* at 874-75.

54206-4-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

We concur:

_____
Glasgow, A.C.J.

_____
Sutton, J.

10