[No. 10279-6-I.  Division One.  April 11, 1983.]

THE STATE OF WASHINGTON, *Respondent*, v. PATRICIA PAPADOPOULOS, ET AL, *Defendants*, PENNY MARIE KANTAS, *Appellant*.

*Raymond H. Thoenig* and *James E. Sedney* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *William Downing, Deputy,* for respondent.

SCHOLFIELD, J.—Defendant Penny Marie Kantas appeals her conviction, following jury trial, for first degree robbery, with a special weapons verdict pursuant to RCW 9.95.040 that she was armed with a deadly weapon, a handgun. We reverse her conviction and remand for resentencing for second degree robbery without a deadly weapon finding.

Kantas, Patricia Papadopoulos, and Theofanis Papadopoulos were each charged with first degree robbery while armed with a deadly weapon. Mr. and Mrs. Papadopoulos entered guilty pleas prior to trial and testified for the State.

On November 24, 1980, an employee of Kenmore Lanes left her office for the purpose of making a bank deposit of

approximately $12,000. As she entered her van, which was parked in the parking lot adjoining Kenmore Lanes, a masked man carrying a handgun entered the van, ordered her into the back of the van and drove the van away. In a few minutes, he stopped the van, ordered the employee to drive away without looking back, and left with the cash and checks making up the intended bank deposit.

An orange–colored car driven by Kantas, with Mrs. Papadopoulos as a passenger, followed the van out of the parking lot. A witness recorded its description and license number. There was evidence the orange–colored car belonged to Kantas.

According to testimony presented at trial, Kantas and the Papadopouloses together planned the robbery. Kantas and Mrs. Papadopoulos drove Mr. Papadopoulos to Kenmore Lanes, where he carried out the robbery. Kantas and Mrs. Papadopoulos followed the van from Kenmore Lanes, picked up Mr. Papadopoulos after he left the van and drove him to his apartment, where he was paid his share of the loot. Kantas and Mrs. Papadopoulos were arrested that same day at an apartment they shared.

Fingerprint and other evidence also connected Kantas with the robbery. The ski mask, gloves, and gun used in the robbery were found in Kantas' automobile.

We first address Kantas' contention that her conviction must be reversed because of prejudice arising from the prosecutor's allegedly improper comments during final argument.

At trial, the Papadopouloses' credibility was in issue and was strenuously attacked by defense counsel. In the course of his argument, the prosecutor stated that "Patty and Theo have testified honestly before you", and, later, that "[T]he gist of what they have said has been the truth." Kantas argues these comments amount to a "vouching" for the witnesses in violation of CPR DR 7–106(C)(4), which requires that a lawyer not

[a]ssert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a

civil litigant, or as to the guilt or innocence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matters stated herein.

We do not agree.

■ A statement by counsel clearly expressing his personal belief as to the credibility of the witness or the guilt or innocence of the accused is forbidden. *State v. Case,* 49 Wn.2d 66, 298 P.2d 500 (1956). It is not uncommon for statements to be made in final arguments which, standing alone, sound like an expression of personal opinion. However, when judged in the light of the total argument, the issues in the case, the evidence discussed during the argument, and the court's instructions, it is usually apparent that counsel is trying to convince the jury of certain ultimate facts and conclusions to be drawn from the evidence. Prejudicial error does not occur until such time as it is clear and unmistakable that counsel is not arguing an inference from the evidence, but is expressing a personal opinion. *State v. LaPorte,* 58 Wn.2d 816, 365 P.2d 24 (1961). Here, the entire argument in context reveals the deputy prosecutor merely called the jury's attention to those facts and circumstances in evidence tending to support the credibility of Mr. and Mrs. Papadopoulos.

In bolstering Mr. Papadopoulos' credibility, the prosecutor also pointed out that he voluntarily turned himself in when the evidence against him was very weak and "Patty can't testify against her husband, Theo in a trial". Defense counsel objected that the comment did not state the law correctly. He did not move to strike or request a curative instruction. The court reminded the jury that counsel's comments were not evidence and the argument proceeded.

■ We agree that the prosecutor's reference to the marital privilege was improper. Arguments concerning questions of law must be confined to the instructions given by the court. *State v. Estill,* 80 Wn.2d 196, 492 P.2d 1037 (1972); *State v. Brown,* 35 Wn.2d 379, 213 P.2d 305 (1949). Nevertheless, the comment is an isolated point in an

extended discussion relating to the Papadopouloses' credibility. Any prejudice was substantially mitigated by the trial judge's instruction that jurors were to follow the law as given them by the court. Any remaining possibility of prejudice could have been obviated by a curative instruction.

The prosecutor also argued on rebuttal that the prosecutor's recommendation for sentencing Mr. and Mrs. Papadopoulos was probation and 9 months in the county jail, which he described as a "fair recommendation on a first offense." Defense counsel objected that the argument was not based on evidence before the court. The court overruled the objection. There was no motion to strike or request for a curative instruction. At the conclusion of the final arguments to the jury, defense counsel made a motion to dismiss for governmental misconduct. The motion was denied.

Counsel are prohibited from intentionally arguing facts not in evidence, but are permitted a reasonable latitude in arguing inferences from the evidence. *State v. Rose,* 62 Wn.2d 309, 382 P.2d 513 (1963); *State v. Reeder,* 46 Wn.2d 888, 285 P.2d 884 (1955).

Further, trial courts customarily instruct the jury that

> Counsel's remarks, statements and arguments are intended to help you understand the evidence and apply the law. They are not evidence, however, and you should disregard any remark, statement or argument which is not supported by the evidence or the law as given to you by the court.

WPIC 1.02. When the objection was made to the prosecutor's comment about a wife not being allowed to testify against her husband, the court reminded the jury that counsel's comments were not evidence.

While the conditions of the prosecutor's recommended probation for the Papadopouloses were discussed in the evidence in this case, the deputy prosecutor's comments to the jury went beyond the scope of the evidence and, to that extent, were improper. We are satisfied, however, that the comments complained of do not amount to prejudicial error and that the result of the trial would have been the same

had the improper comments not been made.

Trial of this case commenced February 17, 1981. At trial, issues were raised as to whether the gun was operable and whether it was loaded. However, no issue was raised nor was any instruction either given or requested concerning whether Kantas had knowledge of Mr. Papadopoulos' possession of a gun.[1]

The court instructed on the definition of an accomplice and, in a separate instruction, advised the jury:

> For the purposes of the special verdict, the law provides that if one person is armed with a deadly weapon, all accomplices are deemed to be so armed, even if only one deadly weapon is used in the commission of the crime.

Instruction 15. In giving instruction 15, the trial court relied upon the law as then stated by *State v. Silvernail,* 25 Wn. App. 185, 605 P.2d 1279 (1980) and *State v. Rieger,* 26 Wn. App. 321, 613 P.2d 163 (1980).

Kantas assigns error to the trial court's instruction which permitted the jury to find she was armed with a deadly weapon if anyone participating in the robbery was so armed. We agree that, in light of three decisions subsequent to Kantas' trial, the instructions were erroneous.

■■ In January 1982, Division Two of this court decided *State v. Plakke,* 31 Wn. App. 262, 266, 639 P.2d 796 (1982), in which the defendant Plakke was convicted in the trial court as an accomplice to first degree robbery. The jury found Plakke had no knowledge that a coparticipant in the robbery possessed a deadly weapon (a knife). The court held:

> Accordingly, when the evidence permits a finding that an alleged accomplice to first degree robbery is unaware of the presence of a weapon or what appears to be a weapon, the alleged accomplice is entitled to an instruction on second degree robbery.

The court vacated Plakke's first degree robbery conviction

---

[1]We assume that this issue may be raised for the first time on appeal. *See State v. McKim,* 98 Wn.2d 111, 653 P.2d 1040 (1982).

and remanded for resentencing for second degree robbery.

In September 1982, this Division decided *State v. Van Pilon,* 32 Wn. App. 944, 651 P.2d 234 (1982). Defendant Rosenkranz appealed her conviction on two counts of first degree robbery. Whether Rosenkranz was armed or had knowledge a coparticipant was armed was a disputed issue in the case. The jury was instructed that

> if an accomplice to a defendant is armed with a deadly weapon in the commission of a crime, both are considered armed with a deadly weapon.

*State v. Van Pilon, supra* at 947.

Rosenkranz assigned error to the deadly weapon special verdict entered against her. We held

> that a defendant must have actual knowledge of the presence of a deadly weapon in order to be subjected to the enhanced penalty provisions of RCW 9.95.040.

*State v. Van Pilon, supra* at 952. The court then struck the deadly weapon finding. Adopting the analysis and holding of *State v. Plakke,* we also reversed Rosenkranz' conviction for first degree robbery and remanded for resentencing for second degree robbery.

In November 1982, our Supreme Court filed its opinion in *State v. McKim,* 98 Wn.2d 111, 118, 653 P.2d 1040 (1982), a first degree robbery case. McKim was convicted as an accomplice pursuant to jury instructions that for purposes of the deadly weapon allegation, "'if one of the two participants is armed with a . . . deadly weapon, then both are considered to be so armed.'" The parties agreed that McKim was not personally armed during the robbery.

In *McKim,* the court interpreted RCW 9.95.015[2] as

---

[2]RCW 9.95.015 provides:

"In every criminal case wherein conviction would require the board of prison terms and paroles to determine the duration of confinement and wherein there has been an allegation and evidence establishing that the accused was armed with a deadly weapon at the time of the commission of the crime, the court shall make a finding of fact of whether or not the accused was armed with a deadly weapon, as defined by RCW 9.95.040, at the time of the commission of the crime, or if a jury trial is had, the jury shall, if it find the defendant guilty, also find a special verdict as to whether or not the defendant was armed with a deadly weapon, as

requiring a special finding of fact beyond a reasonable doubt that McKim, an accomplice,

> was either actually armed with a deadly weapon or was constructively armed with such a weapon. The phrase "constructively armed with a deadly weapon" means the accused's accomplice must have been actually armed with a deadly weapon and the accused must have had *knowledge* that the accomplice was so armed.

*State v. McKim, supra* at 117. The court then struck the special finding that McKim was armed with a deadly weapon under RCW 9.95.040 and remanded for resentencing without the special verdict. The court affirmed McKim's conviction for robbery in the first degree without discussion of whether a first degree robbery conviction can stand in the absence of a finding the unarmed defendant had actual or constructive knowledge of the coparticipant's possession of a deadly weapon.

*State v. Plakke* concluded that the statutory scheme and constitutional precepts require that an accomplice share the guilty knowledge of the principal to justify a conviction for first degree robbery based on the use of a deadly weapon in the commission of the robbery. *State v. McKim* reached the same result in respect to the applicability of RCW 9.95.040 through interpretation of RCW 9.95.015.

The combined reasoning of *Plakke, Van Pilon,* and *McKim* compels the conclusion that an unarmed defendant cannot be punished for possession or use of a firearm or deadly weapon in the commission of a crime unless the trier of fact enters a special finding of fact beyond a reasonable doubt that the unarmed defendant had actual or constructive knowledge that a coparticipant in the crime possessed such a weapon.[3]

There being no special finding which establishes that

---

defined in RCW 9.95.040, at the time of the commission of the crime."

[3]The point in the planning and commission of the crime at which knowledge of the presence of the weapon will meet the law's requirements to support a finding of actual or constructive knowledge must be left for later determination.

Kantas had actual or constructive knowledge of Mr. Papadopoulos' possession of a gun, the special finding made pursuant to RCW 9.95.040 must be stricken. *State v. McKim, supra; State v. Van Pilon, supra.* Likewise, Kantas' conviction for first degree robbery must be reversed. *State v. Van Pilon, supra; State v. Plakke, supra.*

However, we see no necessity for retrial. By its verdict, the jury necessarily found all of the elements necessary to convict Kantas of robbery in the second degree.[4] Accordingly, this case is remanded for resentencing for second degree robbery without a deadly weapon finding.

CALLOW and CORBETT, JJ., concur.

Reconsideration denied May 12, 1983.

Review denied by Supreme Court July 19, 1983.

[Nos. 10837-9-I; 11751-3-I;   Division One.      April 11, 1983.]
11411-5-I; 11977-0-I.

---

[4]RCW 9A.56.190 provides, in part:
"A person commits robbery when he unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone."
RCW 9A.56.210 provides:
"(1) A person is guilty of robbery in the second degree if he commits robbery.
"(2) Robbery in the second degree is a class B felony."