# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49024-2-II |
| Respondent, | |
| v. | |
| SETH AARON FULMER, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — A jury found Seth A. Fulmer guilty of one count of failure to register as a sex offender. Fulmer appeals arguing that he was denied his right to present a defense because the trial court sustained hearsay objections during his testimony. He also argues that the trial court erred by admitting evidence of flight and the prosecutor committed misconduct during oral argument. We affirm.

## FACTS

The State charged Fulmer with one count of failure to register as a sex offender after having previously been convicted of failure to register on two or more prior occasions. The information alleged that between September 25, 2015 and January 13, 2016, Fulmer had failed to comply with registration requirements.

Prior to trial, the trial court held a CrR 3.5 hearing to determine whether the statements Fulmer made prior to his arrest were admissible. The trial court found that, when Fulmer was contacted during a routine traffic stop, he provided the officer with a false name. And the trial

court found that after the officer confirmed Fulmer's actual identity, he arrested Fulmer on two outstanding warrants: one for failure to register and one unrelated warrant. The trial court also found that Fulmer admitted to using a false name because Fulmer was not ready to leave his daughters. The trial court concluded that Fulmer's statement giving a false name was admissible because Fulmer was not in custody at the time that he made the statement. And the trial court concluded that his second statement regarding his daughters was admissible because it was made after Fulmer was properly advised of his *Miranda* rights. The trial court also concluded that the false name was "admissible under ER 404(b) as res gestae and it tends to show guilty conscience. The probative value is not substantially outweighed by the danger of unfair prejudice." Clerk's Papers (CP) at 79.

At trial, the State presented the testimony of three witnesses to prove that Fulmer was not living at his registered address during the relevant charging period. John Green was the owner of the property. Green testified that Fulmer moved into the property in October 2015. Green testified that he was at the property three to four days a week. Prior to December 6, Greene regularly saw Fulmer at the property. However, Green did not see Fulmer at the property after December 6. Green also stated that Fulmer's rent was paid by a Department of Corrections (DOC) voucher that covered October through December. Green did not receive any payment for January 2016.

In January 2016, Paul Brown was the assistant manager for the property. On January 12, Brown gave a written statement stating that he had not seen Fulmer recently. Brown also testified that at the time he gave the written statement he had moved into Fulmer's room and placed Fulmer's belongings in storage.

Kendrick Smith testified that he managed the property. From April 2015 through May 2016, Smith resided in one of the residences located on the property. Smith testified that in January 2016, he was at the property every day and was familiar with the tenants' activities. Smith testified that he had not seen Fulmer on the property since approximately mid-November. He also testified that Brown moved into Fulmer's room in December 2015.

Officer Eric Norling testified to the statements that Fulmer made during the traffic stop and his arrest. Detective Ray Shaviri of the Pierce County Sheriff's Department was a detective assigned to the sex offender registration unit. Shaviri testified that he made several attempts to contact Fulmer at the property but was unable to contact him. Shaviri attempted to make contact with Fulmer on different days and times.

The parties stipulated that Fulmer had two prior convictions for felony failure to register as a sex offender.

Fulmer testified that he was sleeping, eating, keeping personal belongings, and receiving mail at the property between September 25, 2015 and January 13, 2016. Fulmer testified that he paid rent for September, October, and December with DOC housing vouchers. He explained that the housing vouchers expired in December and he was unable to pay rent for January. However, he continued to live at the property after he "discussed the issue with Paul Brown." III Report of Proceeding (RP) at 168. During Fulmer's testimony, the following exchange took place:

> [DEFENSE COUNSEL]: And what did Paul Brown say about you living at the house in January?
> [STATE]: Objection, hearsay.
> [COURT]: That would be hearsay. Sustained to the question.
> [DEFENSE COUNSEL]: What was your understanding about staying at the house in January?

3

[STATE]: Same objection. It requires hearsay testimony.

[DEFENSE COUNSEL]: I believe his understanding doesn't require him to say what Paul Brown said.

[COURT]: Well, it's a back door entry of the alleged hearsay statement. He can testify as to what he did.

[DEFENSE COUNSEL]: Were you allowed to stay at the house?

[STATE]: Objection. Same objection.

[COURT]: Sustained to the form of that question. This witness can testify as to what he did.

III RP at 168-69. After the trial court sustained the State's hearsay objections, Fulmer testified that he continued to live at the property. He also testified that he was never told that he could not stay at the property and that he was not served with an eviction notice. During the month of January, Fulmer was looking for work so that he could pay the rent. During Fulmer's testimony, the State made another hearsay objection:

[DEFENSE COUNSEL]: Now, in the beginning of January, now, were you aware that Detective Shaviri wanted to speak with you?

[FULMER]: Yes, ma'am.

[DEFENSE COUNSEL]: How were you aware that he wanted to speak with you?

[FULMER]: A few residents made it -- well, they told me that --

[STATE]: Objection, hearsay.

[COURT]: Again, he can't testify as to what someone else told him.

[DEFENSE COUNSEL]: You were aware that he wanted to speak with you?

[FULMER]: Yes, ma'am.

[DEFENSE COUNSEL]: What steps did you take to contact Detective Shaviri?

[FULMER]: He left a card for me, so I replied to it. I left him a brief message, because he came over there. He was really rude, so I was a little bit agitated.

III RP at 171-72. Fulmer also testified that the traffic stop had nothing to do with his failure to register as a sex offender and that he lied about his name because he thought that DOC had issued

a warrant for his arrest. And Fulmer admitted that he had a prior conviction for making false statements.

Prior to closing arguments, Fulmer proposed a limiting instruction regarding the statements Fulmer made to Officer Norling:

> Certain evidence has been admitted in this case for only a limited purpose. This evidence consists of a February 9, 2016 traffic stop in which the defendant gave a false name and address. This evidence is to be considered only in regards to the identification of the defendant. You may not consider this evidence for any other purpose. Any discussion of the evidence during your deliberations must be consistent with this limitation.

CP at 46. The State objected to the instruction and argued that the jury should be able to consider Fulmer's statement to evaluate his testimony and his credibility. The trial court agreed and declined to give the instruction:

> Well, obviously Mr. Fulmer elected to testify and place his credibility directly before the jury in terms of where he was residing, and the fact that his last registration occurred in September of 2015, and there was never a subsequent registration given all the way up until the February traffic stop. So I will not give that.

III RP at 180.

In closing argument, the prosecutor focused on the testimony from Brown, Smith, and Shaviri. In his closing argument, Fulmer emphasized the actual charging period (September 25, 2015 through January 13, 2016) and argued that nothing that happened before or after that period was relevant. He also pointed out elements of the testimony that he believed the jury may have perceived as confusing or conflicting. Fulmer specifically argued that the February traffic stop should not be considered by the jury:

> Now, the state wants you to start thinking about what happened in February. That's when that last traffic stop occurred, when Mr. Fulmer got up on the stand and he

admitted that he lied about his name. He lied about his name, because of something unrelated to this case. This date doesn't matter, because the state has to prove that Mr. Fulmer was complying with his registration requirements -- I'm sorry, was not complying with his registration requirements, only through this date.

So regardless of what happened in February is of no consequence, because it is not part of the period that is charged in this case.

III RP at 213. During rebuttal argument, the prosecutor made the following statements:

[STATE]: And furthermore, Mr. Fulmer knows that he has to register. He has been doing it a long time. He knows this is serious stuff. He leaves a number. He knows where to go. He could come down here if he was really that concerned, but he doesn't right? There is no evidence that he came down here to follow-up with Detective Shaviri.

[DEFENSE COUNSEL]: Objection, burden shifting.

[STATE]: That's not burden shifting, Your Honor.

[COURT]: The prosecutor can argue what the evidence was that was presented. The burden still remains on the state to prove the case beyond a reasonable doubt.

[DEFENSE COUNSEL]: But Mr. Fulmer has no burden to show that he came in and updated his registration.

[COURT]: Again, this is argument.

[STATE]: The evidence as presented, there is no indication that Mr. Fulmer ever came in to say, "Hey, Detective Shaviri, I'm there. Let's figure something out." Okay. That is not his burden to get up there and tell you that. But also there is a dearth of information. All of this is proving a negative, right? He wasn't there. If he was there, then we wouldn't be here. If there was direct evidence that he was living there, nobody would be here today. But there is none. Failure to register itself is about proving a negative.

. . . .

Kendrick Smith might have a crime of dishonesty in his past, and you heard him testify about that. He had the questions about what that meant and thought maybe it wasn't dishonest, depending on what you steal. But what he doesn't have, he does not have a 2006 conviction for false statements. He wasn't stopped by a police officer on a basic traffic stop, and he didn't give a false name on February 9th of 2016, because he was afraid he was going to get arrested. And the only time he came clean was after he got caught. If [he] was able to slip under the radar, would he have given him facts, would he have come clean? Would Seth Fulmer have told the truth?

III RP at 222-23, 225.

The jury found Fulmer guilty of failure to register as a sex offender. The jury also found that Fulmer had previously been convicted on at least two occasions of the crime of felony failure to register as a sex offender. The trial court imposed a standard range sentence. Fulmer appeals.

ANALYSIS

I. RIGHT TO PRESENT A DEFENSE

Fulmer argues that the trial court erred by excluding two portions of his testimony as inadmissible hearsay: (1) Fulmer's conversation with Brown that he could stay living at the property without paying rent and (2) the other residents' statements that Detective Shaviri had been looking for Fulmer at the property. Fulmer claims that his testimony was highly relevant to show that he actually was living at the property during the charging period and, therefore, the trial court violated his constitutional right to present a defense by excluding his testimony. We disagree. Although the trial court erred by sustaining some of the State's hearsay objections regarding Brown's statements, the errors were harmless. And the trial court properly excluded Fulmer's testimony regarding the statements made by other residents.

We review an alleged denial of the constitutional right to present a defense de novo. *State v. Lizarraga*, 191 Wn. App. 530, 551, 364 P.3d 810 (2015). Criminal defendants have a fundamental, constitutional right to present evidence in his or her defense. *Lizarraga*, 191 Wn. App. at 551-52. However, the defendant's right to present a defense is not absolute. *Lizarraga*, 191 Wn. App. at 553. "'The accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.'" *Lizarraga*,

191 Wn. App. at 553 (alteration in original) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988)).

We review whether a statement is hearsay de novo. *State v. Gonzalez-Gonzalez*, 193 Wn. App. 683, 689, 370 P.3d 989 (2016). An out of court statement offered to prove the truth of the matter asserted is hearsay. ER 801(c). Unless an exception or exclusion applies, hearsay is inadmissible. ER 802. We review a trial court's exclusion or admission of evidence for an abuse of discretion. *State v. Garcia*, 179 Wn.2d 828, 846, 318 P.3d 266 (2014). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons. *Garcia*, 179 Wn.2d at 846.

If the trial court abused its discretion by improperly admitting or excluding evidence, then we review the constitutional claim. We will reverse the conviction unless we are convinced beyond a reasonable doubt that the error is harmless: that is, that any reasonable jury would have reached the same result without the error. *State v. Smith*, 148 Wn.2d 122, 138-39, 59 P.3d 74 (2002), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). To determine whether an error is harmless, we consider the untainted evidence admitted at trial to determine if it is so overwhelming that it necessarily leads to a finding of guilt. *Smith*, 148 Wn.2d at 139.

We conclude in the following that the trial court abused its discretion by sustaining two hearsay objections. We then assume, without deciding, that these errors are of constitutional magnitude and conclude that they are harmless beyond a reasonable doubt.

A. CONVERSATION WITH BROWN

Fulmer argues that Brown's statements that Fulmer could remain living at the property through January even though he was not able to pay rent, were not hearsay because they were not offered for the truth of the matter asserted. Rather, he argues that Brown's statements were offered to show (1) that Brown had knowledge that Mr. Fulmer was still residing at the property in January and (2) that Brown had committed a verbal act that he had a motive to conceal.

The State's first hearsay objection was to the question posed to Fulmer, "And what did Paul Brown say about you living at the house in January?" III RP at 168. Here, the answer to the question would require Fulmer to testify to Brown's statements because Fulmer asserts that Brown's statement was that he agreed to allow Fulmer to remain living at the property while Fulmer obtained work and obtained the money to pay the rent. The context of the questions show that Fulmer was attempting to prove, through Brown's statements, that he was allowed to remain living in the apartment after the apartment manager testified that Fulmer vacated and was not paying rent. Because, within the context of the questions offered, the statements were offered for the truth of the matter asserted, Brown's statements were inadmissible hearsay. Therefore, the trial court did not abuse its discretion by sustaining the State's first hearsay objection.

The State's second hearsay objection was to the question posed to Fulmer, "What was your understanding about staying at the house in January?" III RP at 168. Here, the question did not specifically call for Fulmer to testify to a statement that Brown made. Therefore, the question did not require a hearsay response and the trial court abused its discretion by sustaining the State's objection to the question. However, later Fulmer testified that he continued to live at the property, was never told to leave the property, and was not evicted from the apartment. Although the trial

9

court erred by sustaining the objection, Fulmer was still able to introduce the substance of his testimony, and thus, we are convinced beyond a reasonable doubt that any reasonable jury would have reached the same result. Therefore, the error was harmless.

The State's third hearsay objection was to the question posed to Fulmer, "Were you allowed to stay at the house?" III RP at 169. Like the second question, the answer to this question does not require Fulmer to directly testify to Brown's statement. Therefore, the trial court also abused its discretion by sustaining the State's hearsay objection to this question. However, the substance of this testimony was also admitted through Fulmer's testimony that he continued to live at the property without being evicted and was never told to leave the property. Accordingly, the trial court's error was harmless.

B. STATEMENTS FROM OTHER RESIDENTS

Fulmer also argues that the statements of other unidentified residents of the building were offered "to show that Mr. Fulmer was at the residence on a sufficiently regular basis to receive notice of Detective Shaviri's visit shortly after it occurred." Br. of Appellant at 18.

Here, the State objected to the following exchange during Fulmer's testimony:

[DEFENSE COUNSEL]: How were you aware that [Detective Shaviri] wanted to speak with you?

[FULMER]: A few residents made it -- well, they told me that - -

III RP at 171. Fulmer was clearly going to testify to hearsay statements made by other residents. Because there is nothing in the record before us that indicates that the statements were being offered for a reason other than the truth of the matter asserted, we conclude that the question called for inadmissible hearsay. Therefore, the trial court did not abuse its discretion by sustaining the State's hearsay objection.

## II. EVIDENCE OF FLIGHT

Fulmer also argues that the trial court erred by admitting evidence of flight. Specifically, Fulmer argues that the trial court should not have introduced evidence that he gave a false name to the police when he was pulled over.

We review a trial court's evidentiary rulings for an abuse of discretion. *Garcia*, 179 Wn.2d at 846. A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons. *Garcia*, 179 Wn.2d at 846. Evidence of flight is admissible if it creates an inference of consciousness of guilt of the crime charged. *State v. McDaniel*, 155 Wn. App. 829, 853-54, 230 P.3d 245 (2010). Circumstances which constitute flight include resistance to arrest, concealment, and assumption of a false name. *McDaniel*, 155 Wn. App. at 854. However, a trier of fact must be able to infer the defendant's consciousness of guilt from the circumstances in order for the evidence to be admissible. *McDaniel*, 155 Wn. App. at 854. Here, Fulmer's false statement to Officer Norling allowed an inference that Fulmer knew he was guilty of failure to register and provided the false name to avoid arrest. Therefore, the trial court did not abuse its discretion by admitting Fulmer's statement giving a false name.

However, the trial court erred by failing to give the limiting instruction that Fulmer had requested. ER 105 requires the trial court to give a limiting instruction, if requested, when evidence is admitted for a specific purpose. Here, Fulmer requested a limiting instruction but the trial court declined to give the instruction. Therefore, under ER 105, the trial court erred by failing to give the requested instruction.

The trial court's failure to give a required limiting instruction is harmless "'unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been

materially affected.'" *State v. Gresham*, 173 Wn.2d 405, 425, 269 P.3d 207 (2012) (internal quotation marks omitted) (quoting *State v. Smith*, 106 Wn.2d 772, 780, 725, P.2d 951 (1986)). Here, the trial court's failure to give a limiting instruction was harmless. The State presented multiple witnesses establishing that Fulmer did not live at the property during the charging period. Moreover, Fulmer's prior conviction for false statements likely damaged his credibility more significantly than the evidence that Fulmer gave a false name to Officer Norling. Accordingly, any error in failing to give a limiting instruction was harmless, and we affirm.

### III. PROSECUTORIAL MISCONDUCT

To prevail on a claim of prosecutorial misconduct, a defendant must establish that the prosecutor's conduct was improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). We must first determine whether the prosecutor's conduct was improper. *Emery*, 174 Wn.2d at 759. We review allegedly improper statements in the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions. *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003). Prosecutors have wide latitude to make arguments and draw reasonable inferences from the evidence. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009).

If the prosecutor's conduct was improper, we then review whether the prosecutor's improper conduct was prejudicial. *Emery*, 174 Wn.2d at 760. The defendant establishes prejudice by showing a substantial likelihood that such misconduct affected the verdict. *Emery*, 174 Wn.2d at 760. If the defendant did not object at trial, he or she must show that the prosecutor's improper conduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. *Emery*, 174 Wn.2d at 760-61.

A. BURDEN SHIFTING

First, Fulmer argues that the trial court erred by overruling his objection to the State's alleged burden shifting argument made during the prosecutor's rebuttal. However, the prosecutor's argument was not improper. Therefore, Fulmer's first prosecutorial misconduct claim fails.

Here, the prosecutor was arguing reasonable inferences from the evidence. The State was not shifting the burden of proof to the defendant to disprove any essential elements of the crime. Therefore, the State's argument was not improper. Because the State's argument was not improper, Fulmer's first prosecutorial misconduct argument fails.

B. INVOKING PRESTIGE OF OFFICE

Second, Fulmer argues that the prosecutor improperly invoked the power and prestige of the prosecutor's office and expressed a personal opinion on Fulmer's guilt. "[A] prosecutor cannot use his or her position of power and prestige to sway the jury and may not express an individual opinion of the defendant's guilt, independent of the evidence actually in the case." *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 706, 286 P.3d 673 (2012). "'Prejudicial error does not occur until such time as it is *clear and unmistakable that counsel is not arguing an inference from the evidence, but is expressing a personal opinion.*'" *State v. McKenzie*, 157 Wn.2d 44, 54, 134 P.3d 221 (2006) (quoting *State v. Papadapoulos*, 34 Wn. App. 397, 400, 662 P.2d 59 (1983)).

Here, the prosecutor told the jury that "[i]f [Fulmer] was there, then we wouldn't be here. If there was direct evidence that he was living there, nobody would be here today." III RP at 223. This argument was improper because the prosecutor explicitly argued to the jury that if Fulmer had been complying with the registration requirements, then the State would not have brought

13

charges and there would not be a trial. This argument was not a legitimate inference from the evidence but rather an express personal opinion from the prosecutor regarding the validity of the charges. Therefore, the prosecutor's comment invoked the prestige of the office and was improper.

Because Fulmer did not object to the prosecutor's improper comment during the rebuttal closing argument, he has to show that the comment was so flagrant and ill-intentioned that no curative instruction could have cured the prejudice. Had Fulmer objected to the comment, the trial court could have given a curative instruction admonishing the jury to disregard the improper comment. We presume that the jury follows the trial court's instructions. *Emery*, 174 Wn.2d at 766. Because the prosecutor's statement was isolated, rather than pervasive, we presume that the jury would have followed an instruction admonishing the jury to disregard the prosecutor's comment. *Emery*, 174 Wn.2d at 766. Accordingly, Fulmer cannot meet his burden to show that the prosecutor's improper statement was flagrant and ill-intentioned and his second prosecutorial misconduct claim fails.

## IV. CUMULATIVE ERROR

Fulmer also argues that the cumulative errors deprived him of a fair trial. "The cumulative error doctrine applies where a combination of trial errors denies the accused of a fair trial, even where any one of the errors, taken individually, would be harmless." *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 690, 327 P.3d 660 (2014).

Here, we have identified three errors: (1) the exclusion of Fulmer's testimony that he was permitted to continue living at the property without paying rent, (2) the failure to give a limiting instruction regarding Fulmer's false statements to Officer Norling, and (3) the prosecutor's improper argument invoking the prestige of the office. However, even taken together, these errors

14

did not deprive Fulmer of a fair trial. As discussed above, the trial court's hearsay rulings did not prevent Fulmer from arguing that he continued to live at the property during the charging period. The failure to give a limiting instruction regarding Fulmer's false statements was harmless error. And Fulmer failed to show that the prosecutor's argument invoking the prestige of the office was so flagrant and ill-intentioned that no curative instruction could have cured any prejudice. Therefore, Fulmer's cumulative error claim fails.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

BJORGEN, J.

MELNICK, J.