IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36850-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOSE Jordan MACIAS LARIOS, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Jose Jordan Macias Larios challenges his convictions for assault

and false imprisonment on the ground that the prosecuting attorney committed

misconduct, during closing statements, by vouching for the victim's credibility, and by

calling Macias a liar. We disagree that the prosecuting attorney personally vouched for

the credibility of the victim or the lack of credibility of Macias. We conclude, however,

that the prosecutor, during summation, inappropriately inserted himself as a witness in

the case. We do not find the improper remarks prejudicial and affirm the convictions.

FACTS

This prosecution arises from the tumultuous relationship between defendant

Jordan Macias Larios and victim Mirna Fuentes. The State prosecuted Macias for

allegedly assaulting Fuentes on February 10, 2019.

Jordan Macias Larios and Mirna Fuentes engaged in a romantic association for a

year and a half beginning in April 2017. The couple fought verbally and physically throughout their relationship. The two lived in the same apartment complex, but in different complex buildings.

On the afternoon of February 9, 2019, Mirna Fuentes took a nap on Jordan Macias' bed in his apartment. Fuentes awoke to Macias on top of her, while he screamed that she engaged in sexual relations with other men. Fuentes directed Macias to get off of her. She returned to her own apartment. Later that day Macias phoned Fuentes and apologized. The parties reconciled, Fuentes returned to Macias' apartment, and she prepared dinner. According to Macias, Fuentes then aggressively confronted him about seeing another woman.

On February 9, 2019, at 10 p.m., Jordan Macias Larios and Mirna Fuentes rode an Uber to the Sports Page Bar in Kennewick, located a mile from their apartment complex. While at the bar, the parties quarreled. Macias alternatively called Fuentes a "'hoe,'" "'whore,'" and "'worthless.'" Report of Proceedings (RP) at 126.

Jordan Macias Larios and Mirna Fuentes disagree as to events occurring on their leaving the Sports Page Bar. According to Fuentes, Macias rode home in an Uber. Fuentes refused to ride with him and walked home in the snow. On arriving at the apartment complex, Fuentes went to Macias' apartment to retrieve personal belongings. When she arrived, Macias again accused her of affairs with other men. Macias pushed her against a wall. Fuentes denied the accusations of infidelity and told Macias that she

2

wanted her belongings. Macias retreated in order to retrieve the objects. When he returned with the possessions, Fuentes touched him as part of gaining possession of the items. Fuentes insisted she did not strike Macias. Once she touched him, Macias kicked Fuentes and pushed her to the ground. She stood and swung at Macias, but he blocked the blows. Macias shoved Fuentes to the ground again, covered her nose and mouth, and asked her how she liked not being able to breathe. Macias slapped Fuentes' face multiple times. Fuentes bit Macias' thigh in an attempt to free herself. Fuentes asked him to allow her to stand. On Fuentes standing, Macias asked her if she was done. He continued to call her names. Macias threatened to sever Fuentes' head and hang the head in a closet. Macias also threatened Fuentes' children.

According to Mirna Fuentes, she could not call law enforcement because of a dead phone. Jordan Macias Larios blocked the exit door to his apartment, instructed Fuentes to calm down, and directed her to go to sleep. The couple smoked marijuana. Fuentes slept at Macias' apartment because she had bruises on her face, and she did not want to return home to have her children see the injuries.

According to Jordan Macias Larios, an angry Mirna Fuentes arrived at his apartment late on February 9 after walking home from the Sports Page Bar. The two smoked. Fuentes then said she was cold and wanted to sleep, so the two lay on Macias' bed, and Fuentes momentarily fell asleep. Macias awoke Fuentes and directed her to return to her apartment. Fuentes refused. Fuentes asked Macias why he wanted her to

leave, to which he replied that he knew she was unfaithful. Fuentes immediately hit, punched, and slapped Macias. He asked her to leave again, and she continued to strike him. Macias tackled Fuentes to the ground and told her to leave. She responded: "'All right. Just let me go.'" RP at 251. Macias relented, Fuentes stood, and Fuentes began hitting Macias again. Macias took Fuentes to the ground again. The pattern of behavior repeated itself. When Macias allowed Fuentes to stand again, she punched and slapped him. He wrestled Fuentes to the ground a third time, and she kicked him in the back. Fuentes also bit Macias' thigh. Macias hit her on the top of her head. Macias released Fuentes again. When she stood, she resumed her attack on him. Macias clasped Fuentes, escorted her to the door, placed her outside, and locked the door. Macias insisted that he never restricted Fuentes' ability to breath or uttered any threats.

Mirna Fuentes returned to Jordan Macias Larios' apartment the following morning. From February 10 to February 14, Fuentes stayed at Macias' apartment, and the two engaged in occasional consensual sexual intercourse. Each later claimed that the other apologized for his or her misbehavior during the night of February 9.

On February 13, 2019, Mirna Fuentes took pictures on her cell phone of the bruising on her face. On February 14, Jordan Macias Larios refused to host Fuentes for Valentine's Day dinner. On February 15, 2019, Macias engaged in sexual comportment with a new girlfriend, Leah Teats. During the activity, Fuentes banged on Macias' apartment window and screamed at him.

4

On February 22, Mirna Fuentes contacted police and reported the physical assault that occurred on February 10. RP 190. Kennewick Police Department Officer Scott Peterson met Fuentes on February 22. Fuentes e-mailed Peterson the photographs of her facial bruises. Peterson noticed slight discoloring on Fuentes' face that corresponded with the bruises seen in the photos.

On February 24, 2019, Kennewick Police Department Officer Jeffrey Sagen met with Jordan Macias Larios and inquired about his interaction with Mirna Fuentes on February 9. Officer Sagen later prepared a report of his interview of Macias. The report did not mention any injuries having been sustained by Macias.

PROCEDURE

The State of Washington charged Jordan Macias Larios with assault in the fourth degree, assault in the second degree, felony harassment, and unlawful imprisonment. The State attached a domestic violence intimate partner allegation to each charge.

During trial, the State introduced as exhibits the photographs that Mirna Fuentes took of her face on February 13, 2019. Fuentes testified that the bruising seen on the pictures arose from the injuries she sustained when Macias struck her on February 10.

On cross-examination of Jordan Macias Larios, the deputy prosecuting attorney inquired as to injuries that Macias may have sustained during the February 10 altercation. Macias averred that he suffered a bite on his thigh from the altercation, among other

5

injuries.  Because Macias testified to additional injuries, the State's attorney inquired

further:

> Q.  Where exactly?
> A.  Chest area, on my back, forearms from blocking.
> Q.  Anywhere visible?
> A.  I had a scratch on my forehead.  And I could feel, like, a bruise; but it wasn't very visible on my face.
> Q.  If Officer Sagen came back in and testified, would he testify that you had injuries—
> MR. SWINBURNSON: Objection, Your Honor.  That's speculation.
> THE COURT: Sustained.
> Q.  (MR. SWENSON continuing) Did you have injuries when you saw Officer Sagen?
> A.  On the day of the arrest?
> Q.  When he contacted you on the 24th?
> A.  I'm sure I did.  Yeah.

RP at 263.

In rebuttal, the State called Officer Jeffrey Sagen to testify.  Officer Sagen

reviewed his report to refresh his memory as to whether he observed any injuries on

Jordan Macias Larios when interviewing him on February 24.  Sagen declared that his

report would have noted any injuries if he had observed injuries and that his report

mentioned no injuries.

During closing argument, the State's attorney recounted Mirna Fuentes' version of

the events of February 10.  The prosecuting attorney commented:

> She told you the good and the bad.  She told you that, "Yeah.  I was angry.  That's the reason I went there."  She told you that, you know, "I swung out at him first."  She admitted that.  She admitted to trying to swing

back at him while this was going on.  She told you everything she could remember—the good and the bad.

Mr. Macias Larios got on the stand, and he told a story.  *A story that's essentially a lie* to get out of this.  He never did anything bad.  He was just always the victim.

Look at the context of this relationship and what you've heard here today.  You've got one side that has this: There's no reason I should be here.  Even though there's these pictures here, there's these injuries, there's just no reasons.  I have no idea what's happening here.

RP at 309 (emphasis added).  The defense did not then assert an objection to the

prosecutor's comments.

In rebuttal, the State's attorney remarked:

What's equally important, when we're talking about self-defense, is that not only is this self-defense that's being claimed here today, but, well, *[N]ews to me, Mr. Macias Larios had injuries*—scratches all over his body, visible on his face.  Fourteen days later he said that, if the officer had seen him, that the officer would have seen those injuries.  But you heard—and that's his words.  That's his words that he said himself.  *And that's surprising to me*.

That was surprising to Officer Sagen because Officer Sagen got up on the stand right after that.  And this is where we get into what actually happened versus a story that the defendant wants to tell you, what, *as I said before, is essentially a lie to make this go away*.

And that's important because Officer Sagen came in and said, if he had noticed injuries, because of the nature of what had been reported, he would have documented them right away.  He would have taken photographs.  It would have been in his report.

RP at 335-36 (emphasis added).  Jordan Macias Larios did not then object to these

additional comments.

Later, during the State's rebuttal closing argument, defense counsel objected to

unrelated statements by the prosecuting attorney.  During a side bar, defense counsel

7

discussed the testimony relevant to the immediate objection and the prosecutor's earlier two assertions that Jordan Macias Larios' testimony constituted a lie. Defense counsel stated:

> Your Honor, the other objection I would—I guess I didn't object. But two times he's made an argument that somebody lied. I was prevented from asking if somebody would tell the truth or would lie on the stand. He's not—it's not appropriate for him to say somebody lied either.
> In closing, he can bring up credibility. He can bring up those things. But he's not able to say this person lied.

RP at 339. Trial counsel did not expressly reference the prosecutor's comments about being surprised by Macias Larios's testimony. The trial court ruled that the prosecutor's comments were not inappropriate within their context.

The jury found Jordan Macias Larios guilty of assault in the fourth degree and unlawful imprisonment. On both convictions, the jury returned a special verdict declaring that Macias and Mirna Fuentes were members of the same household. The jury acquitted Macias of assault in the second degree and of harassment.

## LAW AND ANALYSIS

On appeal, Jordan Macias Larios contends the prosecuting attorney committed misconduct during closing argument and that his counsel performed ineffectively by failing to timely object to the comments. In addressing this contention, we first isolate the claimed inappropriate remarks by counsel. Second, we analyze the acceptability or unsuitability of each comment. Third, we discuss whether any wrongful remark caused

prejudice. Fourth, we determine if counsel engaged in ineffective assistance of counsel by failing to timely object to any objectionable comment.

Jordan Macias Larios complains that the prosecutor referred twice to his testimony as "essentially a lie." RP at 309, 335. Macias also criticizes the State's attorney's comments that it was "news to me [the prosecutor]" that Macias suffered injuries and the prosecutor was surprised that Macias testified that Officer Jeffrey Sagen would have seen the scratches on Macias' face and body. RP at 335. We analyze the statements of lying separate from the other two challenged comments.

## Lying

Jordan Macias Larios argues that remarks made by the prosecuting attorney during closing argument, to the effect that Macias lied, affected his right to a fair trial because the prosecutor expressed a personal opinion on Macias' credibility and guilt and vouched for the complaining witness. The State responds that the evidence established that Macias lied, so the prosecuting attorney committed no misconduct. The State emphasizes that Officer Jeffrey Sagen noted no injuries on Macias' person.

When making a closing argument, the prosecuting attorney enjoys wide latitude in making arguments to the jury, and prosecutors may draw reasonable inferences from the evidence. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). The prosecutor may not express a personal opinion, but he commits no misconduct unless the record unmistakably demonstrates a personal opinion independent of the evidence. *State v.*

9

*McKenzie*, 157 Wn.2d 44, 54, 134 P.3d 221 (2006); *State v. Papadopoulos*, 34 Wn. App.

397, 400, 662 P.2d 59 (1983).

In our ruling, we focus on a passage from *State v. Papadopoulos* that this court

does not review a prosecutor's remarks in isolation.

> It is not uncommon for statements to be made in final arguments
> which, standing alone, sound like an expression of personal opinion.
> However, when judged in the light of the total argument, the issues in the
> case, the evidence discussed during the argument, and the court's
> instructions, it is usually apparent that counsel is trying to convince the jury
> of certain ultimate facts and conclusions to be drawn from the evidence.
> Prejudicial error does not occur until such time as it is clear and
> unmistakable that counsel is not arguing an inference from the evidence,
> but is expressing a personal opinion.

*State v. Papadopoulos*, 34 Wn. App. at 400.

When a prosecutor shows that other evidence contradicts a defendant's testimony,

the prosecutor may argue that the defendant is lying. *State v. McKenzie*, 157 Wn.2d 44,

59 (2006). A prosecutor may also present reasons why a jury should believe one witness

versus another. *State v. Copeland*, 130 Wn.2d 244, 290, 922 P.2d 1304 (1996). A

prosecutor may rely on reasonable inferences to question the credibility of a witness.

*State v. Copeland*, 130 Wn.2d at 291-92.

*State v. Calvin*, 176 Wn. App. 1, 316 P.3d 496 (2013) informs our decision. In

*Calvin*, the prosecutor recounted a long list of statements in Donald Calvin's testimony,

which lacked sense when compared with other evidence and contradicted Calvin's other

testimony. The prosecutor commented to the jury that Calvin was "'just trying to pull

10

the wool over your eyes.'" *State v. Calvin*, 176 Wn. App. at 19. Defense counsel

objected and the court overruled the objection. This court affirmed because, in context,

the comments reflected an explanation of the evidence, not a clear and unmistakable

expression of personal opinion.

 *State v. Warren*, 165 Wn.2d 17, 195 P.3d 940 (2008) echoes *State v. Calvin*. The

prosecuting attorney stated that the alleged victim's testimony had a "'badge of truth'"

and "'ring of truth.'" *State v. Warren*, 165 Wn.2d at 30. The prosecutor referenced parts

of her testimony that "'rang out clearly with truth in it.'" *State v. Warren*, 165 Wn.2d at

30. The Supreme Court noted that a prosecuting attorney may not render a personal

opinion as to a witness' credibility. Nevertheless, defense counsel attacked the victim's

credibility during opening statements and cross-examination. Therefore, the prosecutor

could respond that the level of detail in her testimony showed she told the truth.

 *State v. Sargent*, 40 Wn. App. 340, 698 P.2d 598 (1985) presents a different

outcome. The prosecutor opined, "*I believe Jerry Lee Brown. I believe him* when he tells

us that he talked to the defendant, that the defendant told him he had beaten his wife in

the past." *State v. Sargent*, 40 Wn. App. at 343. This court found the comments

improper because they directly stated a personal belief.

 Jordan Macias Larios' prosecuting attorney asked the jury to review the context of

the entire relationship between Macias and Mirna Fuentes. The State's counsel

questioned the veracity of Macias' testimony based on the photographs of Mirna Fuentes

and the lack of any confirmation that Macias sustained injuries. The prosecutor argued the credibility of Fuentes' testimony based in part on her concession to have also hit and bit Macias. The State's attorney never expressly stated his personal belief in the credibility of a witness. Therefore, we conclude the prosecuting attorney committed no misconduct when claiming that Macias lied.

"[N]ews to me," "[S]urprising to me"

Jordan Macias Larios next argues that, by uttering the statements "news to me" and "surprising to me," the prosecutor impliedly told the jury that he did not believe the testimony of Macias. Macias thus also characterizes these additional remarks as vouching. The State responds that the prosecutor, by uttering the comments, explicitly referenced the evidence such that the comments were appropriate. We conclude that, although the prosecuting attorney may have expressed disapproval of the testimony of Macias, the comments raise a variant error of that of the prosecuting attorney inserting himself as a witness. In the words of Macias, the prosecutor injected himself into the proceedings.

The advocate-witness rule prohibits an attorney from appearing as both a witness and an advocate in the same litigation. *State v. Lindsay*, 180 Wn. 2d 423, 437, 326 P.3d 125 (2014); *United States v. Prantil*, 764 F.2d 548, 552-53 (9th Cir. 1985). The prosecutor creates problems when phrasing a closing argument in terms of the prosecutor's view of the evidence. *State v. Jackson*, 150 Wn. App. 877, 889, 209 P.3d

553 (2009). Prosecutors would best serve the criminal justice system by purging

language expressing their personal thought process from the courtroom. *State v. Jackson*,

150 Wn. App. at 889. Counsel may not impart to the jury his or her own personal

knowledge about an issue. *State v. Denton*, 58 Wn. App. 251, 257, 792 P.2d 537 (1990).

The State relies on *State v. Anderson*, 153 Wn. App. 417, 220 P.3d 1273 (2009) in

response to this assignment of error. Daniel Anderson entered a grocery store and placed

items in his pockets. Anderson passed the check stand without paying. Two employees

chased Anderson outside, where a tussle ensued. The employees testified that Anderson

bit one on the arm and threatened the employees with a knife and gun. Anderson testified

that he planned to pay for the items and he never assaulted the employees. During

closing, the prosecuting attorney commented that Anderson's testimony was "'made up

on the fly,'" "'ridiculous'" and "'utterly and completely preposterous.'" *State v.*

*Anderson*, 153 Wn. App. at 430. This court held these were proper arguments because

the prosecuting attorney relied on inferences from the evidence. We find *State v.*

*Anderson* unhelpful because the prosecuting attorney never expressed the impact of

Anderson's testimony on him.

Jordan Macias Larios' prosecuting attorney's comments that Macias' testimony

was "news to me" and "surprising to me" lacked any relevance to the prosecution unless

the State's attorney was a percipient witness. Whether or not an attorney trying a case

learned for the first time some evidence or testimony during the trial lacks materiality to

13

the issues being litigated. The attorney may have not performed due diligence in preparing for the case. Or, in the instance of a criminal prosecution, the State lacks the right to question the accused in advance to hear his side of the story.

By his comments, the prosecuting attorney told the jury that his knowledge of the facts had some importance in determining the guilt or innocence of Jordan Macias Larios. Therefore, he inserted himself as a witness.

The State argues that Jordan Macias Larios failed to preserve this assignment of error and cannot challenge these prosecutor's pronouncements on appeal. We disagree. An accused does not waive the right to challenge prosecutorial comments during summations by failing to timely object to the comments. The untimely objection, however, controls our standard of review. When a defendant objects to the prosecutorial misconduct during trial, this reviewing court's inquiry consists of two prongs, first, the "impropriety of the prosecuting attorney's comments" and second, "their prejudicial effect." *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997). Prejudice is shown when a defendant demonstrates there is "substantial likelihood that the prosecutor's statements affected the jury's verdict." *State v. Lindsay*, 180 Wn. 2d at 440 (2014). If, however, defense counsel fails to preserve the issue of prosecutorial misconduct, the defendant waives the challenge unless he shows that "the conduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice." *State v. Lindsay*, 180 Wn. 2d at 430.

14

Prejudice

Defense counsel did not object contemporaneously to the prosecuting attorney's asserting himself as a witness. Nor did counsel object during the later side bar. Thus, Jordan Macias Larios must show that the conduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. Macias does not satisfy this test.

The State's attorney did not focus on whether or not testimony was new to him. The prosecuting attorney's comments coincided with the testimony of Officer Jeffrey Sagen that Sagen observed no injuries on Jordan Macias Larios. Thus, the prosecutor merely repeated what another witness stated. Macias argues that the prosecuting attorney's mistaken remarks prejudiced him because of the jury's viewing the State's attorney as the purveyor of truth, but Macias provides no analysis of the evidence to demonstrate prejudice.

Ineffective Assistance of Counsel

Jordan Macias Larios argues, in the alternative, that, if he did not preserve the issue of prosecutorial misconduct for review, trial defense counsel provided ineffective assistance by failing to make a contemporaneous objection. To establish ineffective assistance of counsel, the defendant must establish that his attorney's performance was deficient and the deficiency prejudiced the defendant. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). For the same reasons mentioned before, we find no prejudice

in counsel's failure to object to comments from the prosecuting attorney during closing arguments.

CONCLUSION

We affirm Jordan Macias Larios' two convictions.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, J.

_____
Pennell, C.J.