
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  40336-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALEJANDRO JOSE LOMELI, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — Alejandro Lomeli was found guilty of driving while license suspended in the third degree (DWLS) and not guilty of two felony charges following a jury trial.  He appeals, arguing there was insufficient evidence to support the DWLS conviction, the prosecutor engaged in misconduct, and he received ineffective assistance from his trial counsel.  We disagree with each contention and affirm.

BACKGROUND

On December 10, 2023, Washington State Patrol Trooper Stephen Jackson was monitoring the speed of vehicles on State Route 12 in Walla Walla County, Washington.

Utilizing his radar, Trooper Jackson detected a vehicle traveling 79 miles per hour in a posted 60 mile per hour zone. The trooper pursued the vehicle with his emergency equipment activated. The driver of the vehicle delayed before coming to a stop on the shoulder of the roadway. Once stopped, the trooper noticed the vehicle "rocking" like a "heavy weight transfer [was occurring] inside." Rep. of Proc. (RP) at 209-10.

Trooper Jackson approached the passenger side of the vehicle where he greeted two occupants: Mr. Lomeli in the passenger seat and Ricardo Chavez in the driver's seat. Mr. Chavez was breathing heavily while attempting to fasten his seatbelt. Trooper Jackson asked the occupants "if . . . they had switched seats or . . . if they had hid something." RP at 226. Both men denied they had switched seats and attributed the strange movement of the vehicle to a mechanical issue.

When Trooper Jackson asked who owned the vehicle, Mr. Lomeli responded by singing a tune unfamiliar to the trooper. Mr. Lomeli eventually claimed the vehicle belonged to his "baby mama," and he was not driving "because [he] can't, obviously." RP at 227. A "driver's check" of the occupants revealed Mr. Lomeli's license was suspended, Mr. Chavez was not licensed, and that both men were convicted felons. Keys to the vehicle were discovered in Mr. Lomeli's pocket. A subsequent search of the vehicle yielded a small baggie of methamphetamine from the front passenger seat and a loaded firearm from the trunk.

Trooper Cody Mueller, who arrived to assist Trooper Jackson, asked Mr. Lomeli who had been driving the vehicle. Mr. Lomeli replied, "[Mr. Chavez] was in the driver's seat when the other officer walked up." RP at 305-06. Trooper Mueller found the response odd, so he specifically asked Mr. Lomeli whether Mr. Chavez had been driving. Mr. Lomeli denied stating that Mr. Chavez had been driving. The trooper then specifically asked Mr. Lomeli if he had been driving. Mr. Lomeli responded, "no." RP at 306. Trooper Mueller followed up by again asking who had been driving the vehicle. Mr. Lomeli responded by accusing the trooper of asking a trick question.

Mr. Lomeli was charged with unlawful possession of a firearm in the second degree, possession of methamphetamine, and DWLS. The matter proceeded to a jury trial. During summation, and absent an objection from defense counsel, the prosecutor argued:

> I mean, that's odd when you've got a person in the driver's seat and a person in the passenger's seat. [*Trooper Jackson*] *wouldn't have asked that if he hadn't a reason to ask it.* And he asked that because what he had seen preceding his contact was so strange that immediately got his suspicions up and he asked.

RP at 398 (emphasis added).

The jury found Mr. Lomeli not guilty of unlawful possession of a firearm in the second degree and possession of methamphetamine and returned a verdict of guilty to the charge of DWLS.

Mr. Lomeli timely appeals.

3

ANALYSIS

SUFFICIENCY OF EVIDENCE

Mr. Lomeli argues there was insufficient evidence to support a conviction for DWLS. Specifically, Mr. Lomeli argues the State failed to prove he was the driver of the vehicle. We disagree.

The sufficiency of the evidence is a question of law this court reviews de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). "The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that can reasonably be drawn from it." *State v. DeVries*, 149 Wn.2d 842, 849, 72 P.3d 748 (2003). "[I]nferences based on circumstantial evidence must be reasonable and cannot be based on speculation." *State v. Vasquez*, 178 Wn.2d 1, 16, 309 P.3d 318 (2013).

"[T]he jury is the sole and exclusive judge of the evidence, and if its verdict is supported by competent evidence," then the verdict shall be upheld. *State v. Basford*, 76 Wn.2d 522, 531, 457 P.2d 1010 (1969). "[W]hether the evidence be direct, circumstantial, or a combination of the two, the jury need be instructed that it need only be convinced of the defendant's guilt beyond a reasonable doubt." *State v. Bencivenga*, 137 Wn.2d 703, 711, 974 P.2d 832 (1999).

RCW 46.20.342(1) makes it "unlawful for any person to drive a motor vehicle in this state while that person is in a suspended or revoked status or when his or her privilege to drive is suspended or revoked in this or any other state." Thus, to convict Mr. Lomeli of DWLS, the State was required to prove beyond a reasonable doubt that Mr. Lomeli (1) drove a motor vehicle (2) while his driver's license or privilege was suspended or revoked and (3) that the driving occurred in the State of Washington.

Here, evidence was admitted that the vehicle shook and rocked like a "heavy weight transfer [was occurring] inside" for five to eight seconds as Trooper Jackson approached. RP at 220. Trooper Jackson observed Mr. Chavez in the driver's seat breathing heavily while fidgeting with his seatbelt. The driver's seat was noticeably positioned further forward than the passenger seat even though Mr. Chavez was significantly taller than Mr. Lomeli. When Trooper Jackson asked who owned the vehicle, Mr. Lomeli replied, "his baby mama," RP at 249, which would logically link Mr. Lomeli to being responsible for the vehicle. Finally, the keys to the vehicle were located inside Mr. Lomeli's pocket.

In viewing this evidence, as well as all reasonable inferences from the evidence, in the light most favorable to the State, any rational trier of fact could have found that Mr. Lomeli was the driver of the vehicle and had swapped seats with Mr. Chavez on being stopped. Sufficient evidence supports Mr. Lomeli's conviction for DWLS.

PROSECUTORIAL MISCONDUCT

Mr. Lomeli contends the prosecutor committed prejudicial misconduct during summation. Specifically, Mr. Lomeli claims the prosecutor vouched for Trooper Jackson's credibility when she argued the trooper would not have asked whether Mr. Lomeli and Mr. Chavez had switched seats unless he had a reason to ask the question. We disagree the comment amounts to an opinion of Trooper Jackson's veracity.

"Prosecutorial misconduct is grounds for reversal if 'the prosecuting attorney's conduct was improper and prejudicial.'" *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (quoting *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009)). The defendant bears the burden of proving that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). Prosecutors have "wide latitude" in closing to argue reasonable inferences to be drawn from the evidence at trial. *State v. Crossguns*, 199 Wn.2d 282, 296-97, 505 P.3d 529 (2022).

When examining a prosecutor's alleged misconduct, the improper conduct is not viewed in isolation. *Monday*, 171 Wn.2d at 675. Instead, the conduct is looked at "in the full trial context, including the evidence presented, 'the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.'" *Id*. (quoting *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)). The

purpose of viewing the conduct in this light is to determine if the prosecutor's conduct was prejudicial to the defendant, and it will only be viewed as prejudicial when there is a substantial likelihood the misconduct affected the jury's verdict. *Id*. Therefore, when viewing misconduct, the court should not focus on what was said or done but rather on the effect that flowed from the misconduct. *Emery*, 174 Wn.2d at 762.

If a defendant fails to object at trial to the prosecutor's alleged misconduct, then "the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Id*. at 760-61. "Under this heightened standard, the defendant must show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Id*. at 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

During summation, and absent an objection from defense counsel, the prosecutor argued, "[Trooper Jackson] wouldn't have asked [who was driving] if he hadn't a reason to ask it." RP at 398. Because defense counsel did not object to the alleged impermissible argument, Mr. Lomeli must demonstrate that the comment was improper and "flagrant and ill intentioned" such that no curative instruction could have obviated the prejudicial effect. *Emery*, 174 Wn.2d at 760-61.

Improper vouching generally occurs if the prosecutor expresses his or her personal belief as to the credibility of a witness or indicates evidence that was not presented during the trial supports the witness's testimony. *State v. Ish*, 170 Wn.2d 189, 196, 241 P.3d 389 (2010). Prosecutors may argue an inference from the evidence, and prejudicial error will not be found unless it is "'clear and unmistakable'" that the prosecutor is expressing a personal opinion. *State v. Brett*, 126 Wn.2d 136, 175, 892 P.2d 29 (1995) (quoting *State v. Sargent*, 40 Wn. App. 340, 344, 698 P.2d 598 (1985)).

Here, when viewed in "the context of the total argument," the prosecutor's comment is merely an inference drawn from the evidence to connect the circumstantial evidence with Trooper Jackson's resulting concern over who was driving the vehicle. *Emery*, 174 Wn.2d at 764 n.14.

In support of his argument, Mr. Lomeli directs us to *Sargent* where Joseph Sargent was charged with murder and arson based largely on a statement made by his cellmate, Jerry Lee Brown. 40 Wn. App. at 345. During closing argument, the prosecutor stated, "I believe Jerry Lee Brown. I believe him . . . I believe him . . . There was no other reason he would be testifying other than the fact that the people that called him as a witness believed what he has to say." *Id.* at 343 (emphasis omitted). This court concluded the statement amounted to improper vouching because the prosecutor expressed his personal belief of Mr. Brown's testimony that "directly place[d] the integrity of the prosecution on the side of Brown's credibility." *Id.* at 344.

8

Unlike the facts in *Sargent*, here, the prosecutor did not use "clear and unmistakable" language expressing her opinion of the trooper's credibility. *Id*. Rather, the prosecutor was explaining what prompted the trooper to ask who was driving. Prior to the alleged improper comment, the prosecutor stated, "when they're asked who was driving, which is a strange question for a trooper to ask when he approaches the vehicle and says—who was driving." RP at 398. Then, immediately following the alleged improper comment, the prosecutor noted, "And he asked that because what he had seen preceding his contact was so strange that immediately got his suspicions up and he asked." RP at 398. The prosecutor was simply arguing what prompted the trooper to ask who was driving not vouching for the trooper's credibility.

In viewing the comment in the context of all of the evidence and the State's complete argument, the challenged comment does not amount to improper vouching.

Mr. Lomeli next claims that the jury was inherently skeptical of Trooper Jackson's testimony as shown by the acquittal of the two felony charges. We disagree.

To convict Mr. Lomeli of the charges of unlawful possession of a firearm in the second degree and possession of methamphetamine, the State was required to prove Mr. Lomeli knowingly had either actual or constructive possession over the firearm and methamphetamine. To prove constructive possession, the State would have to establish that Mr. Lomeli had dominion and control over the items. "Proximity alone without

9

proof of dominion and control is insufficient to establish constructive possession."
Clerk's Papers at 129.

In this instance, there existed a reasonable doubt as to whether Mr. Lomeli had dominion and control over the methamphetamine or firearm. Notably, the vehicle did not belong to Mr. Lomeli, the firearm was located in the trunk of the vehicle amongst a bag of women's clothing, and the methamphetamine was found on the passenger seat of the vehicle near the center console.

Unlike a minimal nexus between Mr. Lomeli, the firearm, and the methamphetamine, circumstantial evidence supports the jury's finding that Mr. Lomeli was the driver. Trooper Jackson testified to the prolonged period it took the vehicle to pull over, the significant rocking of the vehicle, Mr. Chavez breathing heavily while fidgeting with his seatbelt, the inconsistent positions of the seats against the heights of the occupants, and the keys to the vehicle located in Mr. Lomeli's pocket.

Because the prosecutor's comment was not improper and the acquittals on the felony counts were likely related to the State being unable to prove Mr. Lomeli knowingly possessed the contraband, we disagree the jury was inherently skeptical of Trooper Jackson's testimony.

INEFFECTIVE ASSISTANCE OF COUNSEL

Mr. Lomeli argues defense counsel's failure to object to the prosecutor's misconduct of vouching for the credibility of Trooper Jackson was ineffective assistance of counsel.  We disagree.

Defendants have a constitutionally guaranteed right to effective assistance of counsel.  U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Lopez*, 190 Wn.2d 104, 115, 410 P.3d 1117 (2018).  A claim of ineffective assistance of counsel is an issue of constitutional magnitude that may be considered for the first time on appeal.  *State v. Nichols*, 161 Wn.2d 1, 9, 162 P.3d 1122 (2007).  Ineffective assistance of counsel claims are reviewed de novo.  *State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310 (1995).

The appellant bears the burden of showing (1) that his counsel's performance fell below an objective standard of reasonableness based on consideration of all the circumstances and, if so, (2) that there is a reasonable probability that but for counsel's poor performance, the outcome of the proceedings would have been different.  *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).  If either element is not satisfied, the inquiry ends.  *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

If an appellant bases his claim of ineffective assistance of counsel on his trial attorney's failure to object, he "'must show that the objection would likely have succeeded.'"  *State v. Vazquez*, 198 Wn.2d 239, 248, 494 P.3d 424 (2021) (quoting *State v. Crow*, 8 Wn. App. 2d 480, 508, 438 P.3d 541 (2019)) "A few or even several failures

11

to object are not usually cause for finding that an attorney's conduct has fallen below the objective standard of conduct." *Id.* at 250. "'Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal.'" *Id.* at 248 (quoting *Crow*, 8 Wn. App. 2d at 508).

Mr. Lomeli argues his trial attorney was ineffective for failing to object to the prosecutor vouching for Trooper Jackson's credibility. Because we conclude that challenged statement was not improper, any objection by defense counsel would likely have been unsuccessful. Defense counsel was not ineffective in failing to object to the prosecutor's comment.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____
Fearing, J.

_____
Murphy, J.

12